REUBEN R. SIMPSON *vs.* HERVEY R. EMERY.

Hancock.     Opinion, March 23, 1936.

*Benjamin W. Blanchard*, for plaintiff.
*Fellows & Fellows*, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J.    This case comes on report.

It is an action in trover, for the conversion of a store building, erected by Antonio Lobato on a corner lot, held by him under written lease, in the business section of Bucksport.

Defendant leased the lot to Lobato on January 1st, 1928, for a ten-year term, at the annual rental of $75, payable semiannually in advance, and payment annually by the lessee of any increase of

214

tax, in excess of that levied in 1927, with a provision for forfeiture for non-payment of rent.

The lot was vacant and Lobato had only the promise of a lease when he took possession of it and began building.

After he had erected a one-story building the written lease was executed and delivered.

Later Mr. Lobato added a second story. One side of the building set on an "old foundation," the rest on posts. There was no cellar.

On April 29, 1931, Lobato made a chattel mortgage of the store building to the plaintiff for an expressed consideration of $940.

Lobato went into bankruptcy in December 1932, secured his discharge on May 5, 1933, and the first day of that month the plaintiff began foreclosure of his mortgage.

We find from the record that for a year after the execution of the mortgage defendant knew nothing of the mortgaging of the building to plaintiff; that no rent was paid by Lobato, after 1930, and that on or about December 1st, 1932, defendant claimed forfeiture; Lobato assented, and relinquished possession, giving the key to the building to defendant, and that the latter has had exclusive possession from that date until the present time.

Upon the all-important question of his intention to erect and maintain this store as a chattel, the testimony of Lobato is not convincing. He was a witness for the plaintiff.

In direct examination he was asked:

"Q. Did you have any understanding at all with Mr. Emery about the building?

A. No. What kind of an understanding?

Q. Well, that the building was yours or his?

A. Mine. . . .

Q. Did you ever have any understanding with Mr. Emery about what should become of the building after your lease expired—after your ten years were up?

A. No, sir; I expected . . .

MR. FELLOWS: Just a minute! Not what he expected.

Q. You never had any understanding with him about the building?

A. No, sir."

In his cross-examination the following interrogatories and replies occur:

"Q. As a matter of fact, wasn't it your understanding with Mr. Emery that, when you got through with the property, he was to have the building?

A. After the ten years was up I expected to renew it again.

Q. What I mean is this: You were building this building on a long term or ten-year lease?

A. Yes.

Q. And when you were through with it . . .

WITNESS: Well, when I was through with it I didn't want it.

Q. When you were through with the building Mr. Emery was to have it, wasn't he?

A. Yes, when I got through with it."

In his petition in bankruptcy, under date of December 9, 1932, Schedule B-6, we find the single entry.

"Lease of property on Main St., Bucksport, Maine, dated January 1, 1928. This leasehold terminated, lessee expelled and possession taken by Lessor December 1, 1932 under terms of lease for non-payment of rent."

And where amount of petitioner's debts and values of securities are listed, Schedule A-2, plaintiff's mortgage is listed, with entire absence of estimate of "value" of the mortgaged building.

If these admissions of Lobato, made under oath, have any evidentiary weight they tend to show that in December, 1932, he "understood" his lease was terminated, and that he failed to express any right in the building mortgaged.

On May 1st, 1933, plaintiff commenced foreclosure of his chattel mortgage, and about the first day of the succeeding August his counsel gave notice to the defendant, "to remove any fixtures or other personal property that you (defendant) may now have in the building, as the said Reuben R. Simpson intends to remove the building aforesaid, from the land upon which it now stands."

There is nothing in the testimony of the defendant which may be interpreted as waiving his right to the building except in one question and answer, as follows: "If Lobato had paid the rent according to the terms of the lease for this lot of land, you had no intention of claiming the building, had you? A. If he had paid the rent and all other expenses, I shouldn't have."

This, however, is not sufficient to overthrow the conclusion, drawn from the acts of defendant and his testimony on the points in dispute. When asked, "Did you make any agreement with Mr. Lobato at any time giving him the right to remove the building after the termination of the relationship of landlord and tenant?" he replied, "No."

And, according to the testimony of the plaintiff, in the three conferences these parties had, after the foreclosure proceedings were begun, defendant refused to recognize any right of plaintiff in the building.

It is clear, on the record, that plaintiff asked defendant if he were going to pay Lobato's debt, and equally clear that defendant entertained no such idea.

So much for the record. We hold that the building was affixed to the realty. As stated by defendant, and nowhere disputed, one-half of its periphery rested on an old rock foundation, the rest on concrete posts set in the ground.

"Ordinarily a building on land is not regarded as the proper subject of a chattel mortgage. But a building erected by one person on the land of another, although prima facie a part of the freehold, remains personalty and is the proper subject of a chattel mortgage, if erected under an agreement with the owner of the land that it may be moved."

11 C. J. 445, Section 54.

"In the case of a tenancy for years, i. e. for any fixed and definite term, no agreement to the contrary and no waiver appearing, a tenant must remove his buildings or other fixtures before the termination of his tenancy."

*Henderson* v. *Robbins*, 125 Me., 284, 133 A., 68, 69.

"All fixtures, for the time being are part of the freehold, and, if any right to remove them exists in the person erecting them, this must be exercised during the term of the tenant, and, if this is not done, the right to remove is lost, and trover cannot be maintained for a refusal to give them up."

*Davis* v. *Buffum*, 51 Me., 160.

It is our opinion that Lobato's tenancy was forfeited, under the terms of the lease, long before plaintiff took any steps toward removing the building.

Hence judgment must be

*For defendant.*