CALAIS HOSPITAL *vs.* CITY OF CALAIS.

Washington.   Opinion, February 13, 1942.

*Oscar H. Dunbar,* Machias, for plaintiff.

*Francis W. Sullivan,* Portland, for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MANSER, J.   This is an appeal under R. S., Chap. 13, Secs. 73-78, from the refusal of the assessors of the City of Calais to abate a tax of $540.00 assessed for the year 1939 upon the real estate of the appellant. The case is certified to this court upon report for the rendition of such judgment as the legal rights of the parties require.

In October, 1938, the Calais Hospital was incorporated under provisions of R. S., Chap. 70, as a charitable and benevolent institution, without capital stock, with no provision for dividends or profits, and for the purpose of owning, operating and maintaining a hospital and nurses' training school and a nurses' home. Seven physicians and eight other citizens of Calais and vicinity became Trustees of the institution.

Prior to this time, Dr. W. N. Miner was the owner of the real estate and a private hospital had been conducted by a corporation which owned the equipment, of which corporation Dr. Miner was the principal stockholder.

The new corporation purchased the real estate from Dr. Miner and the equipment from the former corporation for the sum of $30,000.00 and gave its mortgage for that amount to Dr. Miner, payable at the rate of $1,500.00 per year.The transaction was completed December 31, 1938, and the new corporation was in active charge and management from that time. The tax in question was assessed as of April 1, 1939.

The petition for abatement was based upon the claim that the appellant is a charitable and benevolent institution within the purview of R. S., Chap. 13, Sec. 6, Par. III, which provides exemption from taxation of real and personal property of all benevolent and charitable institutions incorporated by the State. This exemption is limited by the provision "but so much of the real estate of such corporations as is not occupied by them for their own purposes, shall be taxed in the municipality in which it is situated." A further amendment to the exempting statute above cited, found in P. L. 1939, Chap. 123, even if pertinent, is without application as it was not then in effect.

The questions for determination are:

Is the present hospital not only incorporated but also conducted as a charitable and benevolent institution, and is its entire real estate occupied for its own purposes?

In support of the claim for exemption, the appellant introduced testimony to the effect that no officer, trustee, physician or surgeon received any compensation from the hospital for

services; that the hospital was available for the patients of any physician or surgeon registered and in regular practice; that the plan of operation was essentially the same as that followed by the public hospitals throughout the State long established and recognized as charitable institutions; that the hospital received from the State in 1939 for several designated purposes nearly $11,000.00 out of total receipts of approximately $27,-000.00. Of such State contributions $7,141.89 comes under the heading "Hospital Appropriation." The authorization for such allocation of funds by the State is found in P. L. 1933, Chap. 1, Sec. 12, which prescribes the procedure to be followed by any charitable or benevolent institution not wholly owned or controlled by the State in order to be entitled to participation in appropriations made for the purpose. It must be shown that the "persons receiving care were in need of such treatment, support or education; that they were not able to pay for the same; that the rates charged are not greater than those charged to the general public for the same service, and that the rates charged to those who are able to pay are not less than the cost of service rendered."

The record justifies the conclusion that this prescribed course was followed. The total amount received from paying patients was $15,001.01.

It further appears that an account was kept of services rendered all patients whether they were financially able to pay or not, but of $8,682.89 in unpaid accounts for 1939, $4,593.24 were regarded as uncollectible. In this connection, Dr. Miner, who was Treasurer and Manager, testified that "no patient was ever turned away from the hospital because of finances."

It does not appear of record that either a training school or home for nurses had been established in 1939, although contemplated by the statement of purposes of the corporation. These features, while tending to emphasize the character of such an institution, are not required as a qualification under the statutory exemption.

The appellee concedes that the hospital corporation, in its legal conception, is charitable.

The major premise in opposition upon the merits is that not all of the building is occupied by the hospital for its own purposes and consequently, under the limitation of the statute above recited, the portion not so used was taxable.

The case of *Ferry Beach Park Assn.* v. *City of Saco*, 127 Me., 136, 142, A., 65, which, like the instant case, was upon an appeal from refusal to abate taxes, and was before the court on report, raised the same issue. Upon examination of the record in that case, the Court found that the properties of the Association, other than a pavilion and a grove used for religious and educational purposes, were subject to taxation, and ordered an abatement upon the portion entitled to exemption.

In the case before us, however, the appellee asserts that because of the admitted fact that the Hospital did not bring in to the assessors a list of its property, not exempt from taxation, in accordance with the requirement of R. S., Chap. 13, Sec. 70, it has no right of appeal and the action of the assessors in refusing to make any abatement, even upon so much of the property as was clearly exempt, is final. The position of the Hospital is that it was unnecessary to file a list as the property was entirely exempt.

The statute is strict in this respect and the Court would have no authority to order an abatement even though the decision of the assessors was manifestly unjust, if any portion of the real estate, however small, was taxable. R. S., Chap. 13, Sec. 70, provides:

"If any resident owner . . . does not bring in such list, he is thereby barred of his right to make application to the assessors or the county commissioners for any abatement of his taxes, unless he offers such list with his application and satisfies them that he was unable to offer it at the time appointed."

The appellee further asserts that the financial statement of

the Hospital for 1939 demonstrates that the institution was conducted upon a profit-making basis, notwithstanding the substantial State contributions, because there was paid to Dr. Miner upon the mortgage indebtedness the sum of $6,000.00, although but $1,500.00 was prescribed as an installment payment. The apparent surplus of receipts over operating expenses is logically accounted for, however, by the fact that part of the assets transferred to the new corporation were bills receivable in the sum of $9,241.36 and as the result of a determined effort a large portion of this sum was collected. In other words, an amount equal to the sum paid Dr. Miner upon his mortgage note was received from sources other than current income. The inference sought to be adduced is not tenable upon review of all the facts.

Recurring to the main contention of the appellee it is, in detail, that there was during 1939 a room in the hospital building used by Dr. Miner as his office in connection with his private professional practice for his personal gain, though without payment of rental by him to the Hospital; that this constituted the dominant use of that portion of the property, and thus subjected such portion to taxation.

The rule has been recently affirmed in *Lewiston* v. *All Maine Fair Association,* 138 Me., 39, 21 A., 2d, 625, in effect that property acquired and designed and always used in good faith for its own purposes remains exempt although occasionally used for the purposes foreign to such purposes, when this could be done without interfering with its general occupation and use of the same property.

So in *Curtis* v. *Odd Fellows,* 99 Me., 356, 59 A., 518, 519, it appeared that the building of the defendant was designed and intended for use by a fraternal order for its meetings and functions, that at times its halls and rooms were let to associate branches of the order, and on Sundays to the Christian Scientists, together with the fact that a single room was also let to the Christian Scientists for two hours a day. The furniture and fixtures throughout the building belonged to the defendant

and the entire building was at all times under its control, subject only to use as above stated. Light, as well as heat, was provided by the defendant when any part of the building was let. Of this situation the court said, page 358, that the defendant,

"is not the exclusive occupant, and the plaintiff claims that the meaning of this clause of the paragraph is the same as if it read, 'so much of the real estate of such corporations as is not exclusively occupied by them for their own purposes, shall be taxed,' etc. But the legislature did not say this. If this had been its intention the adoption of one more word would have made such meaning clear, and we cannot believe that if this had been the intention of the legislature, this one word, which would have made the intention beyond all question, would have been omitted. And for other reasons we are of the opinion that it was not the intention of the legislature that only the real estate of such benevolent and charitable institutions as is occupied by them exclusively should be exempt from taxation."

There is further clarification in the following language of the court:

"The decision of this question must undoubtedly depend very largely upon the facts and circumstances of each case. There may be cases where the use of the property of such an owner for other purposes is of such a dominant character, and the occupation by the owner for its own purposes is so incidental and trivial, or where the use of the property by the owner for its own purposes is so plainly an attempt to evade taxation, the substantial use and occupation being for other purposes, that such occupation would not be sufficient to make the property exempt from taxation under our statutes."

In the present case the question resolves itself into a factual determination concerning the use by Dr. Miner of the particu-

lar room, and whether it was such as to interfere with the general use and occupation of the building by the Hospital for its own dominant purposes.

The salient features are that Dr. Miner was the Treasurer and Manager of the Hospital and the room was his headquarters in connection with his service to the institution; there was no setting aside of the room for his exclusive personal use; it was of mutual convenience, enabling him to continue the practice of his profession, without detriment to Hospital service, but to its advantage, because of the greater facility afforded with reference to the performance of his managerial duties. The doctor received no compensation from the Hospital and the Hospital received no rental income. An arrangement as to the use of one room in the building which benefited the institution in carrying forward its work without additional expense, which segregated no portion to the exclusive use of another, but left the Hospital in dominant control, does not constitute a use which is independent of and alien to the normal functions of the Hospital, even though it was also of advantage to Dr. Miner.

True it is that the burden is on the Hospital to establish its right to exemption. *Camp Associates* v. *Lyman,* 132 Me., 67, 166 A., 59; *Bangor* v. *Masonic Lodge,* 73 Me., 428, 40 Am. Rep., 369. There was sufficient evidence it was incorporated and conducted as a charitable and benevolent institution, and that there was an actual appropriation of all its property for its own purposes. The real estate should not have been assessed, and the hospital is entitled to an abatement of the entire tax.

*Appeal from decision of Assessors of Calais sustained.*

*Tax to be abated.*

*Judgment for appellant with taxable costs.*