**STATE YOUNG MEN'S CHRISTIAN ASSOCIATION OF MAINE**

v.

**TOWN of WINTHROP.**

Supreme Judicial Court of Maine.

Oct. 12, 1972.

Farris & Foley, P. A., by Phillip M. Kilmister, Augusta, for plaintiff.

Locke, Campbell & Chapman, by Frank G. Chapman, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

This Complaint for a Declaratory Judgment questions the validity of taxes assessed upon a portion of the real estate of the Plaintiff which adjoins the area which the Plaintiff operates as the State Y.M.C.A. camp. The matter was decided by a Justice of the Superior Court upon the pleadings and an agreed statement of fact which recites in substance that the parcel of land and building which has been taxed is owned by the Y.M.C.A. and is the residence of the Plaintiff's caretaker. The caretaker is required by his employment to live at the caretaker's cottage which is furnished him rent free, together with fuel and utilities, by the Plaintiff. His wages are $74.00 per week. The agreed statement further recites that:

"The caretaker's duties are that [sic] of a full time general custodian of all of the State YMCA Camp property and includes the painting, repairing and renovation of camp property. He is responsible for the setting up, maintenance and disengagement of all plumbing facilities at the Camp before and after the camping season. He is responsible for the maintenance of all camp equipment and for the general upkeep of the camp grounds including, but not limited to, the cutting of grass in the Spring and Summer months and the cutting of trees and brush, and removal of snow from roofs and driveways during the Fall and Winter months. He is under the year round supervision of W. David Dellert, Director of State YMCA Camp.

The caretaker's cottage is located right next to the major camp area, giving him immediate access to all camp property in case of emergency."

The Justice adjudged that this property was exempt from taxation and that the assessment was void and ordered a tax lien which had been placed upon the property discharged.

We agree with the Justice.

The language of 36 M.R.S.A. § 652 reads in part:

"The following property of institutions and organizations is exempt from taxation:

1. Property of institutions and organizations.

    A. The real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this State . . ."

It is not disputed that the Defendant is such a benevolent and charitable institution. The precise issue before us is whether the exemption is intended to include property of a charitable institution which is used solely as rent-free living quarters of an employee whose duties require him to live on the employer's premises.

It is a universally accepted principle that exemptions from taxation created by statute must be strictly construed. Taxation is the rule and exemption the exception. Green Acre Baha'i Institute v.

Town of Eliot, 150 Me. 350, 110 A.2d 581 (1954). This rule, however, does not require that the narrowest possible meaning must be given to words descriptive of exemption. The strict construction must still be a reasonable construction. Cedars of Lebanon Hospital v. Los Angeles County et al. (and five other cases), 35 Cal.2d 729, 221 P.2d 31, 15 A.L.R.2d 1045 (1950).

This Court has found the exemption applicable to benevolent institutions whose use of its property is only seasonal. Ferry Beach Park Association of Universalists v. City of Saco, 127 Me. 136, 142 A. 65 (1928). We have held that tax exemption is not defeated by the fact that while the dominant use of the property is for its own purposes, the institution rents part of the property occasionally to others. Curtis v. Androscoggin Lodge, No. 24, I.O.O.F., 99 Me. 356, 59 A. 518 (1904); City of Lewiston v. All Maine Fair Association, 138 Me. 39, 21 A.2d 625 (1941).

In The Osteopathic Hospital of Maine v. City of Portland, 139 Me. 24, 26 A.2d 641 (1942) it was found that a vacant lot which had been purchased to accommodate possible future expansion and which was not in actual use, except as nurses and patients might choose to walk there, was occupied by the institution for its own purposes.

In Green Acre Baha'i Institute v. Town of Eliot, supra, 150 Me. at 354, 110 A.2d at 584, we said:

". . . In each situation where exemption is claimed, there must be a careful examination to determine whether in fact the institution is organized and conducting its operation for purely benevolent and charitable purposes in good faith, whether there is any profit motive revealed or concealed, whether there is any pretense to avoid taxation, and whether any production of revenue is purely incidental to a dominant purpose which is benevolent and charitable.

When these questions are answered favorably to the petitioner for exemption, the property may not be taxed."

There, the Plaintiff owned land on part of which there were buildings used for classes, concerts, lectures and dormitories, all in furtherance of its religious and missionary aims. The institution also owned two tracts of undeveloped woodland where the participants in its program walked, prayed and meditated and which were maintained in respectful commemoration of an earlier visitation there of a former leader of the faith. The Court held the entire tract was devoted to the institution's benevolent and charitable uses.

At the time of the assessment in *Green Acre* (as also at the times of assessment in the earlier cases discussed above), the statute [1] exempted "the real and personal property of all benevolent and charitable institutions" but provided that "so much of the real estate of such corporations as is not *occupied* by them for their own purposes shall be taxed" (emphasis added). A literal reading would have restricted the exemption to property which was both owned and occupied by the institution.

The present language creating the exemption—"owned and occupied or used solely for their own purposes"—was adopted by the Legislature in 1953, during the pendency of Green Acre's appeal from the Assessors' refusal to abate its taxes. P.L. 1953, Chap. 37. The revised language specifically exempts property owned by the institution and *either* occupied *or* used by it solely for its own purposes.

While the new statutory language may not have extended the exemption beyond the construction given the former language in *Ferry Beach Park Association, Curtis, City of Lewiston* and *Osteopathic Hospital* —and later given in *Green Acre*—it makes unmistakable that it was not the Legislature's intention that a benevolent institution's claim to exemption should be defeated by the fact alone that the property

1. R.S.1944, Chap. 81 § 6, § III, as amended.

is necessarily occupied by another person rent free in order to permit him to carry out the institution's purposes.[2]

We apply to the present facts the test suggested in *Green Acre*. It is not disputed that the Plaintiff's operation is being conducted in good faith for purely benevolent and charitable purposes. No profit motive is present or is even suggested by Defendant except that the Plaintiff's furnishing its caretaker with rent free housing doubtless enables Plaintiff to obtain his services at a lower price than it would otherwise necessarily pay him if he paid the Plaintiff for rent for the same housing unit. The operation of basic economic principles would appear to bring the employer and employee ultimately to about the same positions of relative financial benefit whether the Plaintiff paid its caretaker a low wage plus free housing at the Plaintiff's expense or a higher wage commensurate with his having to furnish his own housing. There is no pretense to avoid taxation. If any small financial benefit to Plaintiff could be discovered in the present arrangement it certainly would be incidental to the dominant charitable and benevolent purpose of the institution. The same is true of incidental convenience to the caretaker.

■ The Justice found that the cottage property was occupied by the caretaker solely to promote and improve the Plaintiff's charitable purposes, that the cottage was not a revenue producing unit and that it was exempt from taxation.

He was not in error. The property was owned by Plaintiff and used by it solely for its charitable purposes and was exempt from taxation.

Appeal denied.

All Justices concurring.

2. The California Court found that dormitory accommodations furnished to nurses by a hospital and to attendants by a home for elderly people were matters of "institutional necessity" and that these properties were under these circumstances "used exclusively" for the institutions' charitable purposes. Cedars of Lebanon Hospital v. Los Angeles County et al. (and five other cases), supra; Fredericka Home for the Aged v. San Diego County, 35 Cal.2d 789, 221 P.2d 68 (1950).