**ALPHA RHO ZETA OF LAMBDA CHI ALPHA, INC., et al.**

**v.**

**INHABITANTS OF the CITY OF WATERVILLE.**

Supreme Judicial Court of Maine.

Argued Nov. 22, 1983.

Decided May 25, 1984.

Rehearing Denied June 18, 1984.

Jim Mitchell & Jed Davis, P.A., Jed Davis (orally), Augusta, for plaintiffs.

William A. Lee, City Sol. (orally), Waterville, for defendant.

DUFRESNE, Active Retired Justice.

As of April 1, 1980, the assessors of the City of Waterville for the first time assessed a real estate tax upon eight separate buildings located on the Colby College campus and operated individually as fraternity houses respectively for the local chapters of the eight plaintiff-fraternities,[1] all organized as non-stock, non-profit corporations under the laws of the State of Maine. These fraternity houses, affixed to land owned by the College, were nevertheless taxed to the fraternities as the entity or "person" in possession pursuant to 36 M.R. S.A. § 553.[2] See also 36 M.R.S.A. § 551.[3]

On October 17, 1981, each plaintiff-fraternity applied to the Waterville City Council for abatement of the tax assessed against it pursuant to 36 M.R.S.A. § 841.[4] The basis for the abatement at all levels of the litigation, including the claim made before this Court, is that these fraternity buildings, pursuant to 36 M.R.S.A. § 652(1)(B) (1978 & Supp.1982–1983), are tax exempt as

[t]he real estate ... owned and occupied or used solely for their own purposes by literary and scientific institutions.

We agree, and vacate the Superior Court judgment for the defendant City of Waterville which declares that the plaintiff-fra-

---

1. The eight fraternities are: ALPHA RHO ZETA OF LAMBDA CHI ALPHA, INC., COLBY DELTA UPSILON ALUMNI CORPORATION, COLBY PHI CORPORATION, DKE CORPORATION OF THE DELTA KAPPA EPSILON FRATERNITY, GAMMA ALPHA ALUMNI ASSOCIATION INCORPORATED, OF THE ALPHA TAU OMEGA FRATERNITY, TAU DELTA PHI FRATERNITY, XI CHAPTER OF KAPPA DELTA RHO FRATERNITY, and ZETA PSI CHI REALTY ASSOCIATION.

2. 36 M.R.S.A. § 553.—*where taxed*

All real estate shall be taxed in the place where it is to the owner or person in possession, whether resident or nonresident.

3. 36 M.R.S.A. § 551. *Real estate, defined*

Real estate, for the purposes of taxation, shall include all lands in the State and all buildings ... affixed to the same ... Buildings, ... affixed to the land, on leased land or on land not owned by the owner of the buildings, shall be considered real estate for purposes of taxation and shall be taxed in the place where said land is located. ....

4. Throughout the administrative proceedings, the Superior Court action and the appeal to this Court, the fraternities have acted together through the same counsel. As there are no legally significant differences in the cases of the several fraternities, we treat them as if a single entity was involved.

ternities are not entitled to the tax exemptions they seek. We remand to the Superior Court for the entry of a declaratory judgment in favor of each of the plaintiff-fraternities and against the City of Waterville to the effect that each of the plaintiff-fraternities is entitled to the abatement of the real estate tax assessed against it.[5]

## I. *Findings.*

· The Superior Court justice in his opinion found that the plaintiff-fraternities are not themselves literary and scientific institutions qualifying for exemption in their own right, and that their primary purpose is to provide housing and social life for their resident membership. He further found that there may be incidental literary and scientific results from this housing accommodation and social life betterment, just as there are incidental literary and scientific results from the operation of a private bookstore, but such incidental results do not qualify the real estate for literary and scientific exemption. From these findings, he concluded that the fraternities were not entitled to tax exemption as literary or scientific institutions. This reasoning reveals a misconception of the nature of the issue before the Superior Court. Few would dispute the Superior Court's assessment that fraternities are social organizations and not literary or scientific institutions. But the issue in the instant case is not, whether the use of the fraternity buildings by the fraternities to house, and provide social activities for, students of Colby College infused the fraternities with the characteristics of literary or scientific institutions entitling them to tax exemption of the fraternity houses for that reason. Rather, the issue is, whether these fraternity buildings in the context of the attending circumstances of the instant case respecting the actual oversight and control by Colby College over the fraternity houses and the fraternities themselves, must, by reason of the use of these buildings for housing student members of the several fraternities, forfeit the tax exempt status which these buildings of Colby College would otherwise enjoy, where there can be no doubt but that Colby College is a literary and scientific institution.

■ We do agree that findings of the trial court sitting without a jury are binding on the appellate court if based upon reasonable and credible evidence, but the rule presupposes that there is no error of law involved in connection therewith. *See Inhabitants of Town of Owls Head v. Dodge,* 151 Me. 473, 480, 121 A.2d 347, 350 (1956); *Lutick v. Sileika,* 137 Me. 30, 32, 14 A.2d 706, 708 (1940).

■ Furthermore, we are dealing here with a tax on the property itself, the fraternity houses, and not with a corporate tax on the fraternities; and, by force of 36 M.R.S.A. § 551, such buildings located on and affixed to land of the College were taxable, if at all, as real estate, to the owner or person in possession. *See also* 36 M.R.S.A. § 553. Where, as in this case, different parties may have distinct property rights in real estate, such as one having rights in the land and the others in the buildings on the land, and some are entitled to tax exemption while the others are not, it is the use of the property that will determine taxability. The way in which the property is used is the key to whether or not it is tax exempt. *Inhabitants of Town of Owl's Head v. Dodge,* 151 Me. at 481, 121 A.2d at 352. Thus, it is the relationship of the fraternity buildings and their use to Colby College and not to the fraternity corporation that will control the tax status of the property.

## II. *Historical facts*

The historical record reveals a close association between Colby and the design, finance, construction, operation and supervision of the fraternity houses. In the 1930's

5. The fraternities also presented constitutional arguments on appeal. Since we are disposing of the case on statutory grounds, it is unnecessary for us to reach the constitutional issues raised by them.

Colby considered moving its campus to Mayflower Hill, then on the outskirts of Waterville. Because of the role fraternities were playing in housing Colby students, this move was viewed possible only if fraternity houses were constructed in this new location. The reconstruction of the fraternity buildings was an integral component of the relocation of the Colby campus.

Colby did build these houses on land owned by the College. Colby provided 40-year loans to the fraternity corporations to cover one-half the cost of construction. By erecting fraternity houses contemporaneously with the development of the rest of the campus, Colby was able to fit the fraternity buildings architecturally into the general scheme of the College. They are located well within the borders of the campus, near its center. Their water, electrical, sewerage and telephone services are integrated with those of the other buildings on the campus. In some cases they do not have separate meters, and the fraternities are billed on a *pro rata* basis for various utility services.

The fraternity corporations have a right to use and occupy the buildings subject to certain conditions. Colby has promulgated standards governing residency requirements respecting the physical plants themselves, setting minimum occupancy figures and establishing social and academic guidelines for the fraternities. If a fraternity's membership occupancy falls below its minimum, the College fills the vacancies with non-fraternity members. In recent years between 12 and 20 non-fraternity members have lived in the fraternity houses and, in 1981, one fraternity's occupancy fell to the point where Colby used it solely as a dormitory for non-member students that whole year. The College may impose penalties, including expulsion, on fraternities that fail to conform to the College's standards. Each fraternity has an advisor drawn from the Colby faculty and fraternities frequently hold faculty forums and conduct tutoring sessions in the buildings.

Colby handles finances for all of the fraternities. All fraternity members and residents pay their fraternity rent and dues to the College which places the funds in special fraternity accounts. These funds are available to the fraternities which may spend them subject to College approval. Colby requires the fraternities to set room rents no lower than dormitory rates and these rates generally are the same as for dormitory rooms.

All persons living in the fraternity houses are Colby students. The fraternities have no separate dining facilities and the fraternity brothers eat with the rest of the student body. The College provides supplies and maintenance services for the fraternities which are financed from the fraternity accounts. The College treats the fraternity buildings as College property and considers the fraternities agents of the College. Colby maintains insurance on the fraternity houses, holding policies in the name of the College as beneficiary. If a fraternity should cease to have a chapter at the College, Colby under the agreement may exercise one of three options: 1) it may pay the fraternity corporation the fair value of the building, 2) permit a transfer to another campus organization on terms satisfactory to the College, or 3) pay a fair rental based on the net return reasonably to be expected from the use of the building for dormitory purposes.

### III. *The exemption statute*

Section 652 of title 36 provides that the following property of institutions and organizations is exempt from taxation:

(1)(B).

> The real estate and personal property owned and occupied or used solely for their own purposes by literary and scientific institutions.

The test to be applied to determine the tax exempt status of the property in question, here the fraternity houses, is whether the property is actually *owned and used* solely by Colby College for its own purposes as a literary and scientific institution, notwithstanding their occupancy by the fraterni-

ties. This very statute was construed in *State Young Men's Christian Ass'n v. Town of Winthrop*, 295 A.2d 440 (Me. 1972). We said in that case that the rule of strict construction of exemption statutes does not require that the narrowest possible meaning must be given to words descriptive of exemption. Hence, the statutory language was viewed as specifically exempting property which was owned by the institution, whether a benevolent and charitable organization or a literary and scientific one, and which was *either* occupied *or* used by it solely for its own purposes. *Id.* at 442. Thus, cottage property, occupied rent free by a caretaker-employee, owned and used by YMCA solely to promote and improve its charitable purposes, was ruled exempt from taxation.

## IV. *Ownership*

The statute (36 M.R.S.A. § 652(1)(B)) exempts real estate and personal property which is (1) owned *and* (2) occupied or used solely for their own purposes by literary and scientific institutions. Both ownership and occupation solely for one's own purposes or ownership and use solely for one's own purposes are dual requirements of eligibility in testing the taxability status of property of benevolent and charitable or literary and scientific institutions. In the instant case, it cannot be said that the fraternity houses are owned entirely by the fraternity corporations or by Colby College. The record clearly reveals that both have some of the incidents of ownership. The fraternity corporations, as between themselves and the College, can be said to own the buildings, even though affixed to the land, due to the fact that they paid, directly and through a Colby loan, the costs of construction and that the College does recognize certain property rights to the fraternities in the buildings on the departure of the fraternities from the Colby scene. *See Peaks v. Hutchinson*, 96 Me. 530, 53 A. 38, 59 L.R.A. 279 (1902); *Simpson v. Emery*, 134 Me. 213, 183 A. 842 (1936). But Colby, and not the fraternity

corporations, holds virtually all of the incidents of ownership.

 The statutory expression "real estate *owned by* literary and scientific institutions" is one that can have a broad application. Ownership of property may have reference strictly to "title ownership," that is to one having legal title to property as this Court found in *Eastern Trust & Banking Co. v. Bean & Conquest, Inc.*, 148 Me. 85, 90 A.2d 449 (1952). On the other hand, the word "owner" of property may be meant to apply to one having the possession and control of the property as this Court decided in *State v. Mitchell*, 150 Me. 396, 113 A.2d 618 (1955). The term is not a technical one. *Id.* Absent a legislative definition, the term "owned" must be given a meaning consistent with the overall statutory context, and be construed in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation. *Finks v. Maine State Highway Commission*, 328 A.2d 791, 798 (Me.1974); *Town of Arundel v. Swain*, 374 A.2d 317, 321 (Me.1977).

 All real estate within the State is made subject to taxation, 36 M.R.S.A. § 502. Real estate is statutorily defined as including all lands and all buildings affixed to the land, extending to interests and improvements in land, the fee of which is in the State, as well as interests by contract or otherwise in real estate exempt from taxation. 36 M.R.S.A. § 551. The right of taxation, *i.e.* to levy and collect taxes, is an essential attribute of sovereignty and its exercise is necessary to provide the essential needs of State government, *i.e.* to secure such revenue as will be sufficient and indispensable to the preservation of the public peace, health and safety. *Morris v. Goss*, 147 Me. 89, 102–103, 83 A.2d 556, 563–564 (1951). This Court recognized the taxability of the several distinct interests of different parties in the same premises such as between their respective interests in the land as distinguished from their interests in the buildings thereon. *See Port-*

*land Terminal Co. v. Hinds,* 141 Me. 68, 76–78, 39 A.2d 5, 8–9 (1944).

On the other hand, what property shall be exempted from the exercise of the power of taxation rests exclusively with the Legislature, without limitations except such as are imposed by express constitutional provision. *Greaves v. Houlton Water Co.,* 143 Me. 207, 211, 59 A.2d 217, 219 (1948); *In re Maine Central Railroad Co.,* 134 Me. 217, 219, 183 A. 844 (1936). Having in mind the interplay that should exist between the taxation statute and the tax exempt legislation, we believe that the Legislature in this instance did intend an accommodation between the two enactments and that the application of the reasonable construction rule requires the same approach as used by this Court in *Howard D. Johnson Company v. King,* 351 A.2d 524 (Me.1976), and that the statutory expression in section 652—owned and occupied or used solely for their own purposes by literary and scientific institutions—would have reference not only to ownership by reason of holding the legal title but also to a party's usufructuary right to the property.

In the instant case, by agreement between Colby College and the fraternity corporations, the latter have certain rights in and to the fraternity buildings, such as the right to occupy the same within defined limitations, together with the right to be reimbursed on the basis of fair value for the initial construction costs. But the agreement also confirms the permanent control by the College of the fraternity buildings and the land on which they stand, including the right to regain complete possession and the power of disposing of the property. Indeed, the College under the agreement holds the following rights and powers in and over the fraternity houses.

1. The College has the power to expel the fraternity corporations from the property subject to reimbursement of construction costs. This exemplifies an aspect of ownership.
2. The College has the right to control the alienation of the property, the fraternities being denied the exclusive power to sell or rent the buildings to another party. The free alienation of property is another important aspect of ownership. In *Alford v. Emory University,* 216 Ga. 391, 116 S.E.2d 596, 601 (1960), the Georgia Court, in concluding that fraternity houses on its campus are buildings erected for and used as a college and as such were tax exempt, focused on the limited rights of alienability possessed by the fraternities under the contract between them and the University in manner as follows:

the right to the use of the fraternity house is not inheritable, and is assignable only by consent of the university to another fraternity maintaining a regular license charter issued by the university, or to an organization of the students or faculty recognized by the university.

3. The College under the agreement retains the power to control who resides in the fraternity houses. The fraternities cannot lodge non-Colby students in the buildings. When the minimum occupancy figures set by Colby cannot be met by the fraternities, the College sees to it that the extra rooms are filled with non-fraternity students. One fraternity house was turned into a dormitory for non-fraternity students for one full year by decision of the College, when its occupancy fell below the level established by the College.
4. The College requires that charges for rooms in the fraternity houses be set no lower than Colby's dormitory rates; this limits the commercial aspect which the operation of their lodging houses could otherwise have if the fraternities had an owner's complete freedom of action therein. Furthermore, all rental moneys paid by fraternity residents must go to the College, and, though segregated for accounting purposes, may be spent at the request of the fraternities only with College approval.

5. Finally, the integration of the fraternity houses geographically, structurally, architecturally and historically into the development scheme of the College and its campus is strong indication of Colby's ownership status respecting these buildings. Providing maintenance services for the properties and carrying insurance on them as the entity subject to loss in case of destruction are other proofs of ownership interests on the part of the College. *See Matter of Fasi*, 63 Hawaii 624, 634 P.2d 98, 104 (1981); *Hope v. Cavallo*, 163 Conn. 576, 316 A.2d 407, 411 (1972).

In our opinion, Colby College has such control over and holds such a bundle of rights and privileges respecting the fraternity houses involved in this case as to qualify such real estate for tax exemption under 36 M.R.S.A. § 652(1)(B) *for being owned* by a literary and scientific institution, if the property can be said also to be used solely for its own purposes.

## V. *Sole use of fraternity houses for Colby's own purposes*

■ Although the college fraternities, by reason of the original agreement between the parties, have possessory rights in the fraternity houses for purposes of occupancy by its members, those rights are circumscribed by the overriding supervisory and governing control of the College. These fraternity members must also be Colby students. The facilities which the College provides for students who are members of these fraternities are very much similar to the accommodations offered other students on campus, the function and operation of the fraternity houses being practically indistinguishable from that of the regular dormitories. Like dormitories, the fraternity houses serve the College's primary function of housing its students while they attend Colby and complete the required curriculum. Such use is in furtherance of Colby's educational literary and scientific purposes. The social intercourse and recreational activities that take place in fraternity houses do not change the character of the property from one whose use, such as providing sleeping quarters for students, is reasonably incident to and in furtherance of the College's own purposes to a use which is not. Such social activity, although incidental to the primary use of the facilities, may be viewed as essential to the personal, social and moral development of the student. *See University of Rochester v. Wagner*, 63 A.D.2d 341, 408 N.Y.S.2d 157, 164 (1978). Clearly, so far as this record is concerned, the fraternities are integral components of the Colby campus residential system and represent an important part of the commitment of this literary and scientific institution to provide resources and facilities for the needs of all of its students. *Id.* 408 N.Y.S.2d, at 165.

■ Where the utilization of property is reasonably incident to the dominant purpose for which a literary and scientific institution is incorporated, and such utilization is not oriented toward pecuniary profit but, rather, toward providing necessary services and facilities, Maine law exempting such institutions' real estate "used solely for their own purposes" does not preclude tax exemption. *See Maine Medical Center v. Lucci*, 317 A.2d 1, 3 (Me.1974), where this Court held tax exempt the parking garage at Maine Medical Center, even though it generated some revenue, because of the role the garage played in assuring reasonable access to the hospital. Similarly, the Law Court has upheld a tax exemption for the recreational, lodging and musical facilities of a religious commune in *Green Acre Baha'i Institute v. Town of Eliot*, 150 Me. 350, 110 A.2d 581 (1954). *See also Calais Hospital v. City of Calais*, 138 Me. 234, 24 A.2d 489 (1942). The cases of *Silverman v. Town of Alton*, 451 A.2d 103 (Me.1982) and *Hurricane Island Outward Bound v. Town of Vinalhaven*, 372 A.2d 1043 (Me.1977) are readily distinguishable.

## VI. *The Orono Cases*

The City of Waterville argues that the instant case must be controlled by two previous decisions of this Court relating to fraternity houses at the University of Maine complex in Orono, wherein tax exemptions were denied. We disagree. In *Inhabitants of Orono v. Sigma Alpha Epsilon Society*, 105 Me. 214, 74 A. 19 (1909) and *Inhabitants of Orono v. Kappa Sigma Society*, 108 Me. 320, 80 A. 831 (1911), this Court said:

> Not all the real estate of literary and scientific institutions is exempt from taxation. *It is only such as is occupied by them for their own purposes*, or by any officer thereof as a residence. The lot on which this building was erected was occupied neither by the University nor by any officer thereof, but by an independent corporation for its own purposes, and therefore it lost the privilege of exemption which might under other conditions attach to it. (Emphasis added).

Under the controlling tax exemption statute involved in both cases, a literary and scientific institution owning real estate was granted exemption from tax liability only if it actually *occupied* the property for its own purposes or the property was occupied by an officer of the institution as a residence. In *State Young Men's Christian Ass'n v. Town of Winthrop*, 295 A.2d at 442–443, we pointed out that the amendment of the statute by P.L.1953, chap. 37 specifically exempted property owned by the institution which was *either* occupied *or* used by it solely for its own purposes; this, we said, unmistakably demonstrated that it was not the Legislature's intention that the institution's claim to exemption be forfeited by the fact alone that the property was necessarily occupied by another entity rent free in order to carry out the institution's own purposes. This statutory change, together with the complete control of the College over the use of these fraternity houses in promoting the College's corporate purposes by furnishing dormitory facilities for a portion of its student body belonging to the fraternities, clearly points up the inappositeness of our earlier decisions respecting the Orono fraternities.

 Owners of property and others having interests therein have the legal right to decrease the amount of what otherwise would be their taxes, if done by means which the law permits; they may altogether avoid the payment of taxes, if their property is by law exempt from taxation. Avoidance by law is not tax evasion. *See Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); *Matter of Fasi*, 63 Hawaii 624, 634 P.2d 98, 102 n. 6 (1981). This record is devoid of any evidence, and Waterville does not argue the point, that Colby pursued its particular relationship with the fraternities from the beginning to the date of the instant assessment to evade taxation on property devoted to a profitable commercial undertaking. The strict rent controls imposed by Colby on the fraternities and its absolute option to turn these buildings at any time into dormitories completely dispels such characterization. Rather, we must conclude, as did this Court in *Green Acre Baha'i Institute v. Town of Eliot, supra*, that these facilities were operated and used both by the College and the fraternities in good faith solely to promote the corporate purposes of the College, not for profit and within tax avoidance permitted by law.

We hold, as did the Georgia Court in *Alford v. Emory University*, 216 Ga. 391, 116 S.E.2d at 601, that the fraternities are tax exempt:

> Here the use of the property by the fraternities is to provide housing for the students of the university; only students of the university may reside therein; it is a permissive use only, subject to the control, supervision and cancellation by the university, with the obligation on its part in the event of cancellation to pay the fraternity the cost of the construction of the house, less depreciation.

 The party claiming tax exemption must bring his case unmistakably within the spirit and intent of the act creating the exemption, here 36 M.R.S.A. § 652(1)(B). *See Pentecostal Assembly, etc. v. Maidlow,* 414 A.2d 891, 893 (Me.1980); *Holbrook Island Sanctuary v. Inhabitants of Brooksville,* 161 Me. 476, 483, 214 A.2d 660, 664 (1965); *Stockman v. City of South Portland,* 147 Me. 376, 378, 87 A.2d 679, 682 (1952). The legislative decision not to tax the property of literary and scientific institutions serves the laudable purpose of lowering the cost of education in Maine. The law well recognizes the importance of promoting affordable education to help assure an informed citizenry. Our constitution reminds us that "[a] general diffusion of the advantages of education [is] ... essential to the preservation of the rights and liberties of the people." Me. Const. Art. VIII. *See State v. McDonough,* 468 A.2d 977 (Me.1983). We conclude that a tax exemption for the fraternity property here at issue is consistent with the letter and spirit of 36 M.R.S.A. § 652(1)(B) and that the plaintiff-fraternities have carried their burden of proof clearly and unmistakably. *See University of Rochester v. Wagner,* 63 A.D.2d at 349, 408 N.Y.S.2d at 161 (tax exemption for fraternities fosters development of educational institution).

## VI. *Exception of college fraternities from exemption of fraternal organizations from taxation*

The City of Waterville further argues that our tax exemption statute expressly denies any tax exemption to college fraternities under any circumstances, since section 652(1)(H) of title 36 provides as follows:

The following property of institutions and organizations is exempt from taxation:

1. *Property of institutions or organizations.*

H. Real estate and personal property owned by or held in trust for fraternal organizations, except college fraternities, operating under the lodge system which shall be used solely by fraternal organizations for meetings, ceremonials, religious or moralistic instruction, including all facilities appurtenant to such use and used in connection therewith. If any building shall not be used in its entirety for such purposes, but shall be used in part for such purposes and in part for any other purpose, exemption shall be of the part used for such purposes.

This issue was contested very forcefully at the Superior Court level on the grounds that exclusion of college fraternities from tax exemption granted to other fraternal organizations, such as the Elks, Masons and Knights of Columbus, was in violation of the equal protection clause and the equal taxation requirements of our constitutions, state and federal, as well as in violation of the constitutional prohibition against discrimination on account of sex, where the statute did not include sororities in the exception. We do not reach the issue in this case.

 This particular segment of the tax exemption statute exempts from taxation real estate *owned by* or *held in trust for* fraternal organizations. We have held that the real estate involved in the instant case is not owned by the fraternity corporations, nor is it held by Colby in trust for them. Under the specific circumstances of this case where control of this real estate is completely in the College and the buildings are used by it solely for its own purposes, such property does not come within the scope of the stated exemption provision, but remains subject to the tax exemption of Colby College as real estate owned and used by the College solely for its own purposes as a literary and scientific institution.

 What we decide is simply this: Where buildings, such as in this case the fraternity houses, are built by the college on campus property as an integral part of its housing system for a portion of its

student body, are subject to complete control by it to the extent of ouster of the fraternities at its option and are used by the college solely for the promotion of its own purposes, such buildings, like all its other structures on campus, are exempt from taxation pursuant to 36 M.R.S.A. § 652(1)(B), notwithstanding the buildings, with college license, may be occupied by fraternity corporations which may also use the same for social intercourse and recreation. Such incidental use will not cause a forfeiture of the tax exemption. *See Curtis v. Odd Fellows*, 99 Me. 356, 59 A. 518 (1904).

Finally, independently of the above-quoted statutory exception, the City of Waterville argues that tax exemption should be denied, because the plaintiff-fraternities engage in sex discrimination, *i.e.* excluding women from membership because of their sex, although Colby College is a co-educational institution. At the Superior Court level, the single justice expressly declined to address that constitutional issue in the exercise of discretion.

■ Generally speaking, whether a declaratory judgment should be issued rests in the sound discretion of the trial court, a discretion judicial in nature, not arbitrary but based on good reason. *Cape Elizabeth School Board v. Cape Elizabeth Teachers Association*, 435 A.2d 1381, 1383 (Me. 1981); *Eastern Fine Paper v. Garriga Trading Co., Inc.*, 457 A.2d 1111 (Me.1983).

■ The justice below determined that issuing a declaratory judgment addressing the sex discrimination issue raised by the City of Waterville would serve no useful purpose and could prejudice the position of other parties not before the court. Without deciding the validity of the reasons given for declining resolution of the issue, we see no error in the court's decision to by-pass the issue, on the ground that a party cannot draw in question the constitutionality of a statute in a declaratory judgment proceeding unless that party is adversely affected by the statute itself. *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 463, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725 (1945), and cases cited.

The entry will be:

Superior Court judgment for the defendant vacated.

Remanded for entry of judgment in favor of the plaintiff-fraternities against the defendant to the effect that the plaintiff-fraternities are entitled to the tax exemptions they seek. Further proceedings to be had consistent with the opinion herein.

All concurring.