The NATURE CONSERVANCY OF the
PINE TREE STATE, INC.

v.

TOWN OF BRISTOL and William E. Benner, Stanford L. Tukey and Carroll M. Hanna in their capacity as Board of Tax Assessors for the Town of Bristol.

Supreme Judicial Court of Maine.

April 24, 1978.

Edward T. Richardson, Jr. (orally), Portland, for plaintiff.

Alan C. Pease, Ervin D. Snyder (orally), Wiscasset, for defendant.

Before WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Plaintiff, The Nature Conservancy of the Pine Tree State, Inc. (Conservancy), commenced a civil action on May 19, 1976 in the Superior Court (Lincoln County) for a declaratory judgment against defendants, the Town of Bristol and three individuals,— William E. Benner, Stanford L. Tukey and Carroll M. Hanna in their capacities as members of that Town's Board of Tax Assessors. Subsequently, each of the parties moved to be awarded summary judgment. On April 11, 1977 the Justice presiding in the Superior Court denied plaintiff's motion for summary judgment, granted those filed by defendants and ordered entry of judgment in favor of each defendant.

Plaintiff has appealed. We deny the appeal.

■ Plaintiff is organized as a Maine corporation, without capital stock, under 13 M.R.S.A. § 901. Plaintiff's stated purposes are:

"To receive and administer property and funds for the promotion and advancement of conservation, educational, scientific and literary purposes; including the preserving or aiding in the preservation of all types of wild nature, including natural areas, features, objects, flora and fauna, and biotic communities; together with the establishment of natural reserves and other protected areas to be used for scientific, educational and esthetic purposes; promoting the conservation and proper use of our natural resources; to engage in or promote the study of plant and animal communities and of other phases of ecology, natural history, and conservation, to promote education in the fields of natural preservation and conservation; and to cooperate with other organizations having similar or related objectives.

"In conformity with the purposes stated in . . . [the foregoing paragraph], to take and hold absolutely in fee simple or in trust by gift, devise, bequest, purchase or lease any property, real, personal or mixed; and to manage and invest the same, as well as to give, grant, convey or otherwise dispose of the same or any part thereof or interest therein, for the accomplishment of the purposes of the corporation."

Plaintiff seeks a tax exemption pursuant to 36 M.R.S.A. § 652 for five of its parcels of land located within the Town of Bristol.[1] Section 652 provides, as here relevant, that:

---

1. Plaintiff's complaint originally sought a declaration in regard to a sixth parcel conveyed by Robert M. Search and Helen C. Search to "The Nature Conservancy." Plaintiff does not direct its argument on appeal to the ruling by the Superior Court that: "Plaintiff is not the owner of the property described in the 1967 warranty deed from Robert M. and Helen C. Search since this deed vested fee simple ownership in The Nature Conservancy, a District of Columbia corporation. Since plaintiff does not own this property, it cannot claim a tax exemption for it under either 36 M.R.S.A. § 652(1)(A) or (B)." We find nothing in the record to question this ruling; Section 652 provides a tax exemption only for institutions "incorporated by this State."

"The following property of institutions and organizations is exempt from taxation:

"1. *Property of institutions and organizations.*

"A. The real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this State . . . ."

For purposes of the decision of this case, the relationship of plaintiff to the five parcels of land for which plaintiff claims a tax exemption is sufficiently described as follows.

One parcel was conveyed by warranty deed dated December 28, 1966 (Lincoln County Registry, Book 627, Page 259) to the Conservancy by Elizabeth Gardner, Helen G. Williams and Anne G. Hinners (referred to hereafter as the Gardner deed). In accepting this deed, the Conservancy agreed

"[t]o permit access at any time to any part of the property by the Grantors, their heirs and assigns",

and

"[t]o invite participation by any of the Grantors in the custodianship of the land."

By warranty deed Bryan and Edith E. M. Holme (Lincoln County Registry, Book 756, Page 190) granted a parcel of land to the Conservancy but excepted and reserved

"a right of way to pass and repass to and from the shore by the footpath as now used; a right of way to pass and repass to and from the shore by a footpath the location of which shall be determined, from Lot A hereinbefore described, as the parties may agree, said rights of way to be for pedestrian use only, and a right to pass and repass over and across the shore . . . [and] . . . a right to prune and cut trees on said conveyed premises to the extent reasonably necessary, from time to time, to maintain a view of the Bay . . . ."

A third parcel of land was conveyed by warranty deed from the Directors of the La Verna Foundation of Round Pond, Maine to the Conservancy (dated December 2, 1965 and recorded in Lincoln County Registry, Book 616, Page 288). This deed was subject to the agreement therein that the "custodianship" of the land

"be placed in the hands of the Trustees (Directors) of the La Verna Foundation so long as those Trustees maintain the principles of conservation laid down by the Conservancy, including access to the property for scientific, educational, aesthetic and empathetic purposes, including the right to erect a shelter on the property for those purposes."

The parties
"further agreed that if the Conservancy fails to acquire clear title to the Tibbetts shore property within 6 years or fails to secure or comply with any of the conditions of this Agreement and the Tibbetts Agreement made at the same time with it, the ownership of the present La Verna Preserve shall revert to the La Verna Foundation."

By warranty deed dated December 13, 1965 (Lincoln County Registry, Book 616, Page 213) Frederick N. Tibbetts also conveyed a parcel of land to the Conservancy with the Conservancy granting to Tibbetts a

"right of access to the shore over existing roads so long as he is a member of the Nature Conservancy, Inc., and acts as necessary to maintain the shore property in its present natural state in accordance with the objectives of the Conservancy."

Finally, by quit-claim deed, Elizabeth E. Hoyt and Anna Hoyt Mavor conveyed their title to another parcel of land (Lincoln County Registry, Book 771, Page 70). This deed excepted and reserved

"to the grantors, their heirs and assigns, a right of way to pass and repass on foot or by vehicle from said remaining land of grantors to the shore across said granted premises."

This deed was also subject to the grantors' right "to a limited amount of cutting for access purposes" to the adjacent land of the Conservancy. The deed further specified that in the case the Conservancy fails to comply with any of the conditions set forth therein, the ownership of the premises "shall revert to the Hoyt sisters, their heirs and assigns." The Hoyt deed was also subject to the "condition" that the Hoyt property, as well as the property previously conveyed to the Conservancy in the La Verna and Tibbetts deeds, shall be placed in the custodianship of the Trustees of the La Verna Foundation

> "So long as these Trustees maintain the principles of conservation laid down by the Conservancy, including access to the property for scientific, educational, aesthetic and emphathetic purposes, and so long as said Trustees desire to exercise such responsibility and do exercise it . . . ."

All of the aforesaid deeds, except the Tibbetts deed, required that the Conservancy hold the land as a nature preserve.

Under 36 M.R.S.A. § 652, the tax exemption is available to charitable institutions and organizations only for

> "real estate . . . owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this State . . . ."

Plaintiff argues that the five above-described parcels of its land which it owns in Bristol are also *used solely* for its own purposes of a general, public or charitable nature.[2]

**2.** Plaintiff does not argue that the properties were "occupied", as distinguished from "used" by plaintiff for its own purposes.

**3.** Section 652 also provides a tax exemption for "[t]he real estate and personal property owned and occupied or used solely for their own purposes by literary and scientific institutions." (§ 652(1)(B)). Although in its brief, plaintiff argues in the alternative that it qualifies for the exemption as a scientific institution, the argument was not pressed at oral argument. In *Hurricane Island Outward Bound v. Vinalhaven*, Me., 372 A.2d 1043 (1977) we denied a tax exemption under § 652(1)(B) to Outward Bound because there was no statement in Out-

Although the parties raise several additional issues with regard to the questions of the Conservancy's charitable nature and the effect of 36 M.R.S.A. § 585 et seq. on § 652, under the approach we take to the decision of this case we need not reach these other issues.[3] We conclude that the use of the properties here involved is not *solely* for the Conservancy's own purposes, as required by § 652.

In reaching this conclusion, our foundational premise is that § 652, as a tax exemption statute, must be

> "strictly construed, and all doubt and uncertainty as to the meaning of the statute must be weighed against exemption." *Hurricane Island Outward Bound v. Vinalhaven*, Me., 372 A.2d 1043, 1046 (1977)

> "The burden of establishing tax exemption is upon the plaintiff. . . . The party claiming it must bring his case unmistakably within the spirit and intent of the act creating the exemption." *Holbrook Island Sanctuary v. Brooksville*, 161 Me. 476, 483, 214 A.2d 660, 664 (1965)

See also *City of Bangor v. Rising Virtue Lodge No. 10, Free and Accepted Masons*, 73 Me. 428 (1882).

Prior to 1953, the tax exemption for the real property of charitable institutions was subject to the exception that

> "so much of the real estate of such corporations as is not occupied by them for their own purposes shall be taxed in the municipality in which it is situated." (R.S.1944, chap. 81, § 6, subsection III)

ward Bound's charter that its objects were exclusively scientific. We concluded that: "Science is not its only primary object and hence it is not entitled to enjoy immunity within 36 M.R.S.A. § 652(1)(B) from the tax imposed." (372 A.2d at 1047) Similarly, plaintiff could not prevail here in claiming a tax exemption as a scientific institution; plaintiff was organized for scientific, literary, *conservation, educational and aesthetic purposes*. See also *Holbrook Island Sanctuary v. Brooksville*, 161 Me. 476, 488, 214 A.2d 660 (1965) (availability of land for scientific study incidental to main purpose of preservation of the land as a game preserve).

Under this prior version of the law this Court had ruled that the Legislature did not intend to confine the exemption to such property as is occupied (or used) *exclusively* by the charitable institution. *Curtis v. Androscoggin Lodge, No. 24, I.O.O.F.,* 99 Me. 356, 358–359, 59 A. 518 (1904).

In 1953 the Legislature changed the language delineating the tax exemption to read real property "owned and occupied or used solely for their own purposes" by charitable institutions. (P.L.1953, chap. 37) In *State Young Men's Christian Association of Maine v. Town of Winthrop,* Me., 295 A.2d 440 (1972) we held that this new language did not preclude the charitable tax exemption where another person may be occupying the property of the charitable institution provided that the charitable institution has authorized the occupancy as necessary to the carrying out of its purposes. *Maine Medical Center v. Lucci,* Me., 317 A.2d 1 (1974) reflects this same principle.

Here, there is no indication that the reservations would be required by "institutional necessity" so that, thereby, they might be taken to be "exclusively" for the institution's charitable purposes. See *State Young Men's Christian Association of Maine v. Town of Winthrop,* supra, at 443, n.2.

As to the instant parcels of real estate the Conservancy's claim to tax exemption is defeated by the requirement that the property, in addition to being "owned" by the charitable institution, must (if, as here, it is not "occupied") be ". . . used *solely* for" the institution's own purposes. (emphasis supplied) By reserving rights of access or rights of way, the deeds from Tibbetts, Holme, Hoyt and Gardner subjected the real estate to private individual uses in addition to, and possibly inconsistent with, the uses contemplated by the plaintiff's stated purposes.

Plaintiff argues that the word "used" means the exercise of any incident of ownership, including merely holding the property for the purpose of preserving it in its natural state without any other actual use of it. We need not here decide whether the term "used" appearing in § 652 may be so construed. We conclude that tax exemption is precluded as to the instant five parcels of land by the statutory requirement that the property be ". . . used *solely* for their own purposes by . . . charitable institutions." (emphasis supplied) We hold that the intendment of this language is to deny the tax exemption where there is an attempt by grantors to reserve private rights of use without the incident burden of paying taxes for the enjoyment of the property. The word "solely" is employed to indicate that a grantor who conveys property to the charitable institution may not retain any strings in terms of use. Land held in its natural state does not become tax exempt by transfer to a charitable institution where the grantor retains the rights to access, passage or custodianship, more particularly since these tend to be the only private rights of ownership exercised while land is privately being held in its natural state.

By reserving private rights of access or rights of way or other private rights, the deeds from Tibbetts, Holme, Hoyt and Gardner make the real estate subject to private noncharitable uses. That the plaintiff Conservancy happens presently to be holding its land open to pedestrian access by the public cannot be controlling. The rights of the private individuals as grantors would remain effective even if plaintiff should decide to bar general access by the public in the belief that such action had become necessary to further the stated purposes of establishing natural preserves and other protected areas for use for scientific, educational, conservation and aesthetic purposes.

The former La Verna, Tibbetts and Hoyt properties are also subject to the control and custodianship of the La Verna trustees. Similarly, the property conveyed in the Gardner deed is subject to participation by the grantors in the custodianship of the land. Such provision that the Conservancy remain subject to a private entity's custodial control of the use of the premises, not-

withstanding that the control is to be exercised harmoniously with the Conservancy's purposes, is inconsistent with the "sole use" condition for tax exemption.

We conclude that since none of the five parcels of land is "used solely . . ." for the Conservancy's "own purposes", the Conservancy's claim to a charitable tax exemption for each of them fails.

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and POMEROY and DELAHANTY, JJ., did not sit.