MAINE CENTRAL
RAILROAD COMPANY

v.

TOWN OF DEXTER, et al.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1991.
Decided March 7, 1991.

---

Philip Worden (orally), Northeast Harbor, for appellant.

Michael E. Carpenter, Atty. Gen., David E. Bauer, Asst. Atty. Gen., Augusta, for amicus curiae.

Gordon H.S. Scott (orally), Eaton, Peabody, Bradford & Veague, Augusta, for appellee.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

CLIFFORD, Justice.

The Town of Dexter (Town) appeals from a judgment of the Superior Court (Kennebec County, *Chandler, J.*) declaring Maine Central Railroad Company (MCRR) exempt from municipal property taxation on its railroad right-of-way located in the Town for the 1989–90 tax year, and granting MCRR a refund of all such municipal taxes paid to the Town pursuant to the 1988–89 tax assessment, plus interest. On appeal, the Town contends that the refund for the 1988–89 tax year was barred by the doctrine of *res judicata*, and challenges the Superior Court's conclusion that federal law preempts the municipal tax assessor from declaring a railroad service line abandoned for the purpose of assessing local property taxes pursuant to 36 M.R.S.A. § 561 (1990). We vacate that portion of the Superior Court judgment granting MCRR a tax refund for the 1988–89 year. We affirm that portion of the judgment

declaring the property exempt from municipal property taxation for the 1989–90 tax year, but we base our decision on state statutory interpretation rather than federal preemption.

MCRR, an interstate rail carrier subject to the authority of the Interstate Commerce Commission (ICC), owns rail tracks and rights-of-way located in the Town. The tracks and right-of-way make up part of a railroad line that runs from Newport to Dover–Foxcroft. When the present dispute began in 1988, MCRR had not used the Newport/Dover–Foxcroft line for several years and had begun taking steps to obtain ICC approval to formally abandon the line.[1] The ICC did not officially approve abandonment of the Newport/Dover–Foxcroft line until July 30, 1990, when it issued a certificate of abandonment to MCRR.

Prior to the issuance of the certificate of abandonment, MCRR paid a state excise tax on the Newport/Dover–Foxcroft line pursuant to 36 M.R.S.A. § 2623 (1990).[2] In 1988, the Dexter municipal taxing authority, acting pursuant to 36 M.R.S.A. § 561,[3] assessed a municipal property tax against MCRR for the right-of-way on the Newport/Dover–Foxcroft line located in the Town of Dexter. This tax was assessed in addition to the state excise tax. MCRR paid the property tax under protest and applied to the assessor for an abatement.[4] MCRR argued that its railroad right-of-way within the Town remained exempt from municipal property taxation until the ICC issued a certificate of abandonment.

On February 14, 1989, the time limit within which the Town was required to respond to the abatement request expired, and pursuant to 36 M.R.S.A. § 842 (1990),[5] the request was deemed denied. MCRR appealed the denial of its abatement request to the Dexter Board of Assessment Review which denied the appeal as untimely.[6] MCRR then appealed to the State

1. In order to abandon a railroad line, a rail carrier must seek ICC approval pursuant to 49 U.S.C. §§ 10903–05 (1990) and 49 C.F.R. § 1152.50. 49 U.S.C. § 10903(a) provides in pertinent part:

   A rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission ... may—
   (1) abandon any part of its railroad lines; or
   (2) discontinue the operation of all rail transportation over any part of its railroad lines;
   . . . .
   only if the Commission finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance. In making the finding, the Commission shall consider whether the abandonment or discontinuance will have a serious, adverse impact on rural and community development.

   The United States Supreme Court has declared the ICC's authority over railroad line abandonment plenary and exclusive. *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 319, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981).

2. 36 M.R.S.A. § 2623 provides:

   Every corporation, person or association operating any railroad in the State under lease or otherwise shall pay to the State Tax Assessor, for the use of the State, an annual excise tax for the privilege of exercising its franchises and the franchises of its leased roads in the State, which, with the tax provided for in section 561, is in place of all taxes upon the property of such railroad.

3. 36 M.R.S.A. § 561 provides:

   The buildings of every railroad corporation or association, whether within or without the located right-of-way, its lands and fixtures outside of its located right-of-way, and so much of its located right-of-way over which all railroad service has been abandoned, are subject to taxation in the places in which the same are situated, as other property is taxed therein, and shall be regarded as nonresident land.

4. 36 M.R.S.A. § 152 (1990) provides that "[a] taxpayer may pay any tax, make any deposit or file any bond at any time without forfeiting any right to apply for a refund or an abatement or to seek review of the validity of the tax." The administrative procedures for abatement are set forth in 36 M.R.S.A. §§ 841–50 (1990).

5. 36 M.R.S.A. § 842 provides in pertinent part:

   The assessors, municipal officers, chief assessor ... shall give to any person applying to them for an abatement of taxes notice in writing of their decision upon the application within 10 days after they take final action thereon. If the assessors ... fail[ ] to give written notice of their decision within 60 days from the date of filing of the application, the application shall be deemed to have been denied, and the applicant may appeal....

6. MCRR filed its appeal to the Dexter Board of Assessment Review on May 9, 1989. The Board found that the sixty-day deadline for appeal

Board of Property Tax Review. The State Board denied the appeal also on the ground of timeliness, citing MCRR's failure to file a timely appeal to the Dexter Board of Assessment Review. The State Board issued a final order denying abatement relief for the 1988–89 tax year.

MCRR then filed a complaint in the Superior Court. Count I was brought pursuant to M.R.Civ.P. 80C and sought judicial review of the State Board of Property Tax Review. Count II sought a declaratory judgment that the municipal property tax assessment is void. The court denied MCRR's Rule 80C appeal of the State Board's denial of its abatement appeal on the grounds that MCRR failed to appeal the denials of the abatement requests in a timely manner. The court considered and ultimately granted MCRR's request for declaratory relief. The court found that the Town's tax assessor lacked authority to assess local property taxes against the railroad in the absence of a certificate of abandonment from the ICC. The court's reasoning was based on federal preemption in the area of abandonment of railroads. The court granted MCRR an abatement of all municipal property taxes assessed by the Town, and the Town appealed. MCRR did not cross-appeal the denial of its 80C appeal.

### 1988–89 TAXES

■ First, the Town challenges the Superior Court's authority to relieve MCRR from the 1988–89 tax in a declaratory judgment action. MCRR unsuccessfully challenged the 1988–89 tax in an administrative abatement proceeding and its Rule 80C appeal seeking judicial review of that administrative action was denied. Accordingly, the Town argues, the issue of the 1988–89 taxes is *res judicata* by operation of the administrative abatement proceeding. We agree.

We have held that the decisions of state and municipal administrative agencies are to be accorded the same finality that attaches to judicial judgments. *Standish Tel. v. Saco River Tel. & Tel. Co.*, 555 A.2d

478, 481 (Me.1989); *Town of N. Berwick v. Jones*, 534 A.2d 667, 670–71 (Me.1987); *Maines v. Secretary of State*, 493 A.2d 326, 329 (Me.1985). The rule is grounded on principles of judicial economy, the stability of final administrative rulings, and fairness to litigants. *Beegan v. Schmidt*, 451 A.2d 642, 646 (Me.1982). Finality will often be given preference over an absolute requirement of validity or correctness in process. *Standish Tel.*, 555 A.2d at 481; *Maines*, 493 A.2d at 329.

■ Under principles of *res judicata*, when an administrative determination becomes final, the Superior Court should not, through a request for declaratory judgment, grant a collateral review on the merits of the administrative determination unless direct judicial review, as provided by statute, is inadequate to prevent irreparable injury. *Fitanides v. Perry*, 537 A.2d 1139, 1140–41 (Me.1988); *Fisher v. Dame*, 433 A.2d 366, 372 (Me.1981). An abatement proceeding is a proper vehicle in which to challenge the taxation of property claimed to be exempt. *Berry v. Daigle*, 322 A.2d 320, 324 (Me.1974). Abatement proceedings, 36 M.R.S.A. §§ 841–50 (1990), and the Administrative Procedure Act, 5 M.R.S.A. §§ 11001–08 (1989), clearly provide taxpayers with "the essential elements of adjudication," *Jones*, 534 A.2d at 670, and with an adequate opportunity to obtain direct judicial review of the taxing authority's denial of a request for an abatement so as to require the applicability of *res judicata*. Because MCRR failed to pursue direct judicial review in a timely manner, it should not be allowed to avoid the finality of the administrative denial of its request for abatement of the 1988–89 tax by attempting to invoke the Superior Court's declaratory judgment jurisdiction. *Fitanides*, 537 A.2d at 1141; *Fisher*, 433 A.2d at 374.

### 1989–90 TAXES

The Town contends that the administrative abatement procedure is the exclusive means available to challenge the validity of the Town's property tax assessment. Ac-

from the deemed denial expired on April 16, 1989. 36 M.R.S.A. § 843(1–A) (1990).

cordingly, the Town argues that because MCRR did not challenge the 1989–90 tax in an abatement procedure, the Superior Court improperly rendered a judgment pursuant to 14 M.R.S.A. § 5953 declaring the 1989–90 tax invalid. We disagree.

■ The Superior Court has discretionary authority pursuant to 14 M.R.S.A. §§ 5951–63 and M.R.Civ.P. 57 to entertain requests for and to enter declaratory judgments in appropriate circumstances. *District Attorney v. City of Brewer*, 543 A.2d 837, 838 (Me.1988). The Superior Court's declaratory judgment authority has been invoked in tax exemption cases. *Maine AFL–CIO Housing Dev. v. Town of Madawaska*, 523 A.2d 581 (Me.1987); *Christian Schools, Inc. v. Town of Rockport*, 489 A.2d 513 (Me.1985); *see Holbrook Island Sanctuary v. Brooksville*, 161 Me. 476, 214 A.2d 660 (1965); *Alpha Rho Zeta v. City of Waterville*, 477 A.2d 1131 (Me.1984). The Superior Court did not abuse its discretion in entertaining the challenge to the 1989–90 taxes in MCRR's declaratory judgment action.

■ The Town further contends that the Superior Court erred in concluding that MCRR is exempt from municipal property taxation in the absence of a certificate from the ICC declaring its railroad line service legally abandoned. We reach the same result as the Superior Court and conclude that the property is exempt, although on different grounds. *See L. Ray Packing Co. v. Commercial Union Ins.*, 469 A.2d 832, 834 (Me.1983) (judgment of trial court may be affirmed on different grounds than used by trial court). We base our conclusion on the interpretation of the applicable state statute and find it unnecessary to reach the issue of federal preemption upon which the Superior Court based its decision.

Maine's railroad taxation scheme, first enacted in 1881, has been upheld by the United States Supreme Court as a valid tax on the "privileges of exercising the franchises of a corporation within a state" that does not interfere with interstate commerce. *Maine v. Grand Trunk Ry.*, 142 U.S. 217, 228–29, 12 S.Ct. 121, 122, 35 L.Ed. 994 (1891). The current scheme, much like its predecessors, imposes an excise tax on a railroad company's gross receipts per mile of track located within Maine. 36 M.R.S.A. §§ 2621–A–25 (1990). Section 2623 expressly states that, except as provided in section 561, the excise tax is imposed "in place of all taxes upon the property of such railroad."

Local authorities may impose a property tax upon railroad-owned buildings and real estate outside the located right-of-way and also upon "located right-of-way over which all railroad service has been abandoned." 36 M.R.S.A. § 561.[7] The Town contends that pursuant to this statute local authorities may determine when to begin imposing local property taxes (and of necessity, when the state would have to cease imposing an excise tax) on located rights-of-way based upon the local authority's own separate determination of whether all railroad service has in fact been discontinued or abandoned under the common law, independent of the ICC's issuance of a certificate of abandonment. We disagree.

Section 561 was written against the backdrop of the United States Supreme Court authority that prohibits double taxation of railroads to the extent that this interferes with interstate commerce. *See Galveston, Harrisburg & Ry. Co. v. Texas*, 210 U.S. 217, 226–27, 28 S.Ct. 638, 639–40, 52 L.Ed. 1031 (1908). We are reluctant to conclude, therefore, that the legislature intended to create a situation where both excise and local property taxes could be assessed on the same property at the same time.[8]

---

7. The phrase "located right-of-way," as used in this statute, has been held to mean the strip of land containing the main track. *Portland Terminal Co. v. Hinds*, 134 Me. 434, 443, 187 A. 716, 720 (1936).

8. We note that under the reading of the statute asserted by the Town, the potential for double taxation would exist. Indeed, in this case, both an excise tax and the local property tax *were* assessed against MCRR for the 1988–89 and 1989–90 tax years. MCRR has not specifically asked the court to rule on the constitutionality of section 561 as applied by the Town.

When the statute was amended in 1969 to allow local property taxation of "located right-of-way over which all rail service has been abandoned," [9] the legislature was aware that the term "abandoned" has special relevance and meaning under federal statutes and regulations that have been in place for over a century. The legislature was also cognizant of the plenary and exclusive power of the ICC over railroad line abandonment, and its use of the word "abandoned" is significant. We conclude that the legislature intended "abandoned" to mean legal abandonment determined by the ICC. Had the legislature meant de facto abandonment or a discontinuance of service as determined by local taxing authorities pursuant to common law principles, it could have used language to that effect.

In the absence of a certificate of abandonment issued by the ICC, railroad companies operating within the State of Maine are subject to the excise tax pursuant to 36 M.R.S.A. § 2623 and are exempt from municipal property tax assessed against their right-of-way pursuant to section 561. Because the ICC did not issue a certificate of abandonment on MCRR's railroad line running through the Town until July 30, 1990, MCRR was exempt from municipal property taxation during the 1989–90 tax year.

The entry is:

Judgment vacated in part. Remanded to the Superior Court for entry of an order affirming the decision of the State Board of Property Tax Review for the 1988–89 tax year. With respect to the 1989–90 tax year, the judgment is affirmed.

All concurring.

---

9. P.L.1969, ch. 5 (eff. Oct. 1, 1969).