MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2013 ME 15
Docket:       Oxf-12-95
Argued:       December 12, 2012
Decided:      February 5, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
              JABAR, JJ.

HEBRON ACADEMY, INC.

v.

TOWN OF HEBRON

LEVY, J.

[¶1] The Town of Hebron appeals from a declaratory judgment of the Superior Court (Oxford County, *Clifford, J.*) determining that the tax exemption for literary and scientific institutions in 36 M.R.S. § 652(1)(B) (2012) exempts certain parcels of Hebron Academy's real estate from taxation by the Town. Hebron Academy cross-appeals, arguing that the court erred in concluding that res judicata barred the court from relieving it of its obligation to pay taxes on its exempt property for the 2009 tax year. We affirm the judgment.

## I. BACKGROUND

[¶2] The court found the following facts, which are supported by the record. *See Bayley v. Bayley*, 602 A.2d 1152, 1154 (Me. 1992).

2

[¶3]  Hebron Academy is a private, nonprofit preparatory school that owns real estate in Hebron and offers a curriculum similar to that of a liberal arts college, with required courses in English, literature, science, and other subjects.

[¶4]  In addition to its regular sources of revenue, Hebron Academy generates about $130,000 per year by renting some of its facilities on a short-term basis to outside individuals and organizations.  The rental revenue accounts for approximately one percent of its operating budget, and the rentals do not interfere with Hebron Academy's use of the properties for its own purposes.  Also, various Hebron Academy properties are subject to private rights and restrictions, including rights of way to access other property or maintain utilities, a restriction on building, and a reversionary clause that will be triggered if certain property ceases to be used for academic purposes.  These uses are minimal in scope and do not affect the school's use of the properties for its own purposes.

[¶5]  Pursuant to 36 M.R.S. § 841 (2012), on or around March 31, 2010, Hebron Academy requested a tax abatement from the Town for tax year 2009.  The Town denied the request because Hebron Academy had not filed the abatement request before the statutory deadline.  *See* 36 M.R.S. § 841(1).  Pursuant to 36 M.R.S. § 843(1) (2012), Hebron Academy appealed to the Oxford County Board of Assessment Review, which held a hearing and denied the abatement request on the same ground, without addressing the merits.  Hebron Academy did

not seek judicial review of the Board's decision by appealing to the Superior Court pursuant to 36 M.R.S. § 844-M(6) (2012) and M.R. Civ. P. 80B.

[¶6]   In December 2010, Hebron Academy filed a complaint seeking a declaratory judgment that it is a literary and scientific institution within the meaning of 36 M.R.S. § 652(1)(B), that its properties are exempt from taxation, and that the Town must reimburse it for all real estate taxes it paid on its exempt properties for the prior three years, including 2009.  Following a one-day hearing, the court entered a judgment declaring that Hebron Academy was entitled to the exemption for most of its property, but that res judicata precluded the court from relieving it of its obligation to pay the 2009 real estate taxes on its exempt property.  The court subsequently amended the judgment to require the Town to reimburse Hebron Academy for all taxes paid on its exempt properties for the tax years 2008, 2010, and 2011, with interest.  The Town appeals and Hebron Academy cross-appeals from the amended judgment.

## II.  LEGAL ANALYSIS

A.    Hebron Academy's exemption status pursuant to 36 M.R.S. § 652(1)(B)

[¶7]   As a general rule, "[a]ll real estate within the State . . . is subject to taxation."  36 M.R.S. § 502 (2012).  However, there is a tax exemption for "[t]he real estate . . . owned and occupied or used solely for their own purposes by literary and scientific institutions."  *Id.* § 652(1)(B).  "Exemption is a special favor

conferred. The party claiming it must bring his case unmistakably within the spirit and intent of the act creating the exemption." *Humboldt Field Research Inst. v. Town of Steuben*, 2011 ME 130, ¶ 7, 36 A.3d 873 (quotation marks omitted). Thus, the party seeking an exemption pursuant to section 652(1)(B) has the burden to prove that (1) it meets the "literary and scientific institutions" requirement, (2) it owns the property, and (3) the property is "occupied or used solely for [its] own purposes." *See* 36 M.R.S. § 652(1)(B); *Humboldt Field Research*, 2011 ME 130, ¶ 7, 36 A.3d 873; *Alpha Rho Zeta of Lambda Chi Alpha, Inc. v. Inhabitants of Waterville*, 477 A.2d 1131, 1136 (Me. 1984).

[¶8]  Here, the Town concedes that Hebron Academy owns the properties in question, but contends that (1) Hebron Academy is not a literary or scientific institution within the meaning of the tax exemption, and (2) Hebron Academy's property is not "occupied or used solely for [its] own purposes."  We consider each contention in turn.

1.    Hebron Academy's qualification as a literary and scientific institution

[¶9]  The meaning of "literary and scientific institutions" is an issue of statutory interpretation, which we review de novo. *See Hurricane Island Outward Bound v. Town of Vinalhaven*, 372 A.2d 1043, 1046 (Me. 1977).  We begin by looking to the plain language of the statute. *Fuhrmann v. Staples the Office Superstore East, Inc.*, 2012 ME 135, ¶ 23, --- A.3d ---.  If that language is

susceptible to more than one meaning, we will look to legislative history to discern the Legislature's intended meaning. *See id.* We interpret the pertinent language mindful that "[a] tax exemption statute is narrowly and strictly construed with all doubt and uncertainty as to its meaning being weighed against exemption." *Humboldt Field Research*, 2011 ME 130, ¶ 5, 36 A.3d 873.

[¶10]  Here, the statute does not define "literary and scientific institutions," and reasonable minds can differ as to whether that term is broad enough to encompass a preparatory school like Hebron Academy.  As such, the term is ambiguous, which leads us to (a) consider our previous interpretation of the term "literary and scientific institutions," and (b) examine relevant portions of the legislative history that illuminate the Legislature's intended meaning of the term.

a.  Prior case law interpreting the term "literary and scientific institutions"

[¶11]  We have previously concluded that to meet the "literary and scientific institutions" requirement, an institution need only be literary *or* scientific. *Hurricane Island*, 372 A.2d at 1046.  We have also concluded that a liberal arts college and a university are literary or scientific institutions within the meaning of the tax exemption.  *See Alpha Rho Zeta*, 477 A.2d at 1134 ("[T]here can be no doubt but that Colby College is a literary and scientific institution."); *Inhabitants of Orono v. Kappa Sigma Society*, 108 Me. 320, 324, 80 A. 831 (1911) ("The

University of Maine is a literary or scientific institution."). However, our decisions in *Alpha Rho Zeta* and *Kappa Sigma* do not offer clear guidance as to Hebron Academy's qualification as a literary or scientific institution because neither decision articulates the standard by which we concluded that the academic institutions at issue in those cases qualified as literary or scientific institutions.

[¶12] Furthermore, our remaining case law is instructive only as to the types of educational institutions that do not qualify as literary or scientific institutions. For example, in *Hurricane Island*, we held that an organization that operated a "self-discovery" program did not qualify as a literary or scientific institution merely because it had educational aims and taught scientific courses. 372 A.2d at 1047. *See also id.* at 1047 n.4 (recognizing that other jurisdictions define "scientific institution" to include institutions that engage in scientific research, but declining to adopt that standard); *Holbrook Island Sanctuary v. Inhabitants of Brooksville*, 161 Me. 476, 488, 214 A.2d 660 (1965) (concluding that a small library of books and an area for nature study were insufficient to qualify a game preserve as a scientific institution).

[¶13] Because our case law does not provide a definitive standard for determining what qualifies as a literary or scientific institution, we turn to the legislative history of the tax exemption for evidence of the Legislature's intended definition of the term. *See Fuhrmann*, 2012 ME 135, ¶ 23, --- A.3d ---.

### b. Legislative history of Maine's tax exemption

[¶14]   Maine's tax exemption for literary and scientific institutions traces back to the 1819 Massachusetts law creating an independent District of Maine, which preserved a tax exemption for land previously granted by the Commonwealth to "any religious, *literary*, or eleemosynary corporation, or society."[1]   1819 Mass. Laws 252 (emphasis added).   Maine incorporated that tax exemption into article X, section 5 of the Maine Constitution, as adopted in 1819. *See Delogu v. City of Portland*, 2004 ME 18, ¶ 17 n.4, 843 A.2d 33.   Over time, the scope of the exemption has waxed and waned.   *See* P.L. 1845, ch. 159, § 5(2); P.L. 1849, ch. 118, § 1; P.L. 1869, ch. 28, § 1.   But particularly relevant to our analysis here is the Legislature's addition and subtraction of the term "academy and college buildings" during the course of the exemption's history.   This facet of the exemption's history demonstrates a legislative understanding that the term "literary institution" includes academic institutions that own "academy and college buildings."   As we have recognized, an "academy" is an institution, like Hebron

---

[1]   The Separation Act of the Commonwealth of Massachusetts provides:

> All grants of lands . . . which have been or may be made by the said Commonwealth, before the separation of said District shall take place, and having or to have effect within the said District, shall continue in full force, after the said District shall become a Separate State. . . . And all lands heretofore granted by this Commonwealth, to any religious, *literary*, or eleemosynary corporation, or society, shall be free from taxation, while the same continues to be owned by such corporation, or society.

1819 Mass. Laws 252 (emphasis added).   Our research reveals no Massachusetts case law prior to 1819 that is illustrative of the meaning of "literary . . . corporation, or society."

Academy, whose primary purpose is to provide for and promote the education of high school students. *See City of Augusta v. Att'y Gen.*, 2008 ME 51, ¶¶ 4, 18, 943 A.2d 582 (concluding that the purpose of a trust created to benefit an academy was to promote education for high school students); *see also* Black's Law Dictionary 12 (9th ed. 2009) (defining "academy" as "[a] private high school").

[¶15]    In 1845, the Legislature enlarged the exemption beyond that contained in the Maine Constitution so as to exempt from taxation "[t]he real and personal property of all literary, benevolent, charitable and scientific institutions incorporated by this state."  P.L. 1845, ch. 159, § 5(2).  Then, in 1849, the Legislature effectively took a step back by restricting the exemption available to literary institutions to their "academy and college buildings":

> *All real estate belonging to literary institutions* in this state, not exempted by the "articles of separation," *except their academy and college buildings* and the lots on which they are erected, shall be liable to be taxed for all purposes and in the same manner as other real estate is now taxed under existing laws.

P.L. 1849, ch. 118, § 1 (emphasis added).  As the 1849 amendment makes clear, the Legislature contemplated that literary institutions own "academy and college buildings."

[¶16]    In 1869, the Legislature expanded the exemption for literary institutions by removing the reference to "academy and college buildings," and exempting "the real and personal property of all literary institutions."  P.L. 1869,

ch. 28, § 1. This amendment reversed the limitation imposed twenty years earlier by again making all of the real and personal property of literary institutions exempt from taxation—not just their "academy and college buildings."

[¶17] In sum, past iterations of the tax exemption show a legislative understanding that "literary institution" includes organizations that would have reason to own "academy and college buildings."[2] They also demonstrate a consistent legislative intent to exempt these buildings from taxation. The eventual omission of the words "academy and college buildings" does not signal any change in the Legislature's understanding that "literary institution" includes academies.

[¶18] In light of the exemption's legislative history and our long-standing precedent recognizing a private liberal arts college and a public university as literary or scientific institutions, we hold that the term "literary and scientific institutions" includes an organization that has as its primary purpose the engagement of students in the academic pursuit of literary or scientific knowledge through the provision of an accredited course of high school education.[3]

---

[2] As a historical footnote, between 1953 and 1979, the Legislature appears to have moved away from this understanding, and then back towards it. In 1953, the Legislature created a special exemption for "[a]ny college in this state authorized to confer the degree of bachelor of arts or of bachelor of science and having real estate liable to taxation." P.L. 1953, ch. 37. In 1979, the Legislature repealed the special tax exemption for colleges, P.L. 1979, ch. 467, § 7, and included in its Statement of Fact that "[i]t appears that qualifying institutions would also be exempt as a literary or scientific institution," L.D. 855 (109th Legis. 1979).

[3] In addition, literary and scientific institutions seeking exemption pursuant to section 652(1)(B) must also satisfy section 652(1)(C), which requires that all profit derived from the operation of a literary or

[¶19] Hebron Academy is a literary and scientific institution because it has a primary purpose of engaging its students in the academic pursuit of both literary and scientific knowledge through the provision of an accredited course of high school education. We therefore turn to the issue of whether Hebron Academy satisfies the exemption requirement that its property be "occupied or used solely for [its] own purposes." *See* 36 M.R.S. § 652(1)(B).

2.  Whether Hebron Academy's property is "occupied or used solely for [its] own purposes"

[¶20] Whether an institution's property is "occupied or used solely for [its] own purposes" is a finding of fact, which we review for clear error. *See City of Lewiston v. Salvation Army*, 1998 ME 98, ¶ 7, 710 A.2d 914. We will affirm that finding if it is supported by the record. *See id.* We have previously determined that an institution's property is "occupied or used solely for [its] own purposes" if the institution (1) occupies the property solely for its own tax-exempt purposes, or (2) uses the property solely for its own tax-exempt purposes. *See Alpha Rho Zeta*, 477 A.2d at 1136; *see also Me. Med. Ctr. v. Lucci*, 317 A.2d 1, 2 (Me. 1974)

scientific institution, including proceeds from the sale of property, "be devoted exclusively to the purposes for which it is organized." 36 M.R.S. § 652(1)(C)(3) (2012).

(analyzing the exemption status of occupied property by looking to whether the use of the property promoted the organization's tax-exempt purposes).[4]

[¶21] As a general proposition, an organization does not occupy or use its property solely for its own tax-exempt purposes if it allows any use of the property that does not promote its tax-exempt purposes. For example, in *City of Lewiston v. Marcotte Congregate Housing, Inc.*, 673 A.2d 209, 211-12 (Me. 1996), we determined that a charitable organization did not use its building solely for its own tax-exempt purposes because it leased a significant portion of the building to tenants for reasons other than the furtherance of the organization's tax-exempt purpose. Similarly, in *Nature Conservancy of the Pine Tree State, Inc. v. Town of Bristol*, 385 A.2d 39, 43 (Me. 1978), a conservancy did not use its property solely for its own tax-exempt purposes because the property was subject to significant non-exempt rights of use that were reserved in the land grants to the conservancy.

[¶22] However, we have recognized an exception to the rule we applied in *Marcotte* and *Bristol*. Property may be "occupied or used solely for" an organization's own tax-exempt purposes if its use for non-exempt purposes is

---

[4] The tax-exempt purposes in *Lucci* were "benevolent and charitable" purposes, not "literary and scientific" purposes. *Me. Med. Ctr. v. Lucci*, 317 A.2d 1, 2 (Me. 1974). Because the operative language in the exemption for property owned by benevolent and charitable institutions, 36 M.R.S. § 652(1)(A) (2012), is the same as the operative language in the exemption for property owned by literary and scientific institutions, 36 M.R.S. § 652(1)(B) (2012), we have routinely considered case law interpreting one subsection as applicable to the other. *See, e.g., Alpha Rho Zeta of Lambda Chi Alpha, Inc. v. Inhabitants of Waterville*, 477 A.2d 1131, 1136 (Me. 1984) (commenting on the occupation or use requirement for property "owned by [an] institution, whether a benevolent and charitable organization or a literary and scientific one").

sufficiently "incidental" to the organization's tax-exempt purposes. Our decisions have recognized two types of "incidental use" that qualify for this exception.

### a. Incidental use related to institutional necessity

[¶23] The first type of incidental use relates to institutional necessity, and involves property uses that are appurtenant to an institution's major tax-exempt purpose. To qualify as this kind of incidental use, the use must not be "oriented toward pecuniary profit but, rather, toward providing necessary services and facilities." *Lucci*, 317 A.2d at 3. For example, in *Lucci*, a hospital's operation of a parking garage was reasonably incidental to its major purpose of providing medical care because it provided hospital employees, patients, and visitors a place to park. *See id.* at 2-3. *See also Salvation Army (Lewiston)*, 1998 ME 98, ¶¶ 3, 4, 7, 710 A.2d 914 (concluding that a rehabilitation center operated a thrift store solely for its own purpose of rehabilitating participants, because it provided "work therapy" for those participants); *Alpha Rho Zeta*, 477 A.2d at 1138 (concluding that a college's housing a fraternity on college property was reasonably incidental to its major purpose of providing college education, where it provided students a place to live while receiving that education).

### b. Incidental use involving de minimis use of property

[¶24] The second type of incidental use that does not preclude the exemption involves de minimis uses of property that do not interfere with the

institution's major tax-exempt purpose. For example, in *Salvation Army v. Town of Standish*, 1998 ME 75, ¶¶ 2, 6, 7, 709 A.2d 727, a non-profit summer camp's rental of its facilities to organizational officers was an "incidental use" not precluding exemption where the camp charged a nominal fee and rented the facilities only when otherwise vacant. *See also Episcopal Camp Found., Inc. v. Town of Hope*, 666 A.2d 108, 108-09 (Me. 1995) (affirming tax exemption for a non-profit summer camp that leased its property in the off-season); *Bristol*, 385 A.2d at 43-44 (determining a property's exemption status by analyzing the scope of non-exempt rights of use to the property and whether they interfered with the organization's tax-exempt purposes).

### c. Incidental use in this case

[¶25] Here, the trial court found that Hebron Academy's rental activity amounted to approximately one percent of its operating budget and did not interfere with its tax-exempt purpose. As such, Hebron Academy's property rental is a de minimis "incidental use" within the meaning of that term, as contemplated by *Salvation Army (Standish)*, *Episcopal Camp*, and *Bristol*.[5] Similarly, the court found that the restrictions on Hebron Academy's land were minimal in scope and did not interfere with the school's use of the property for its own tax-exempt

---

[5] Because we conclude that Hebron Academy's rental of its property qualifies as a de minimis incidental use, we need not consider whether it might also qualify as an incidental use by virtue of institutional necessity.

purposes. As such, these restrictions, too, fall under the classification of a de minimis "incidental use." Because the record evidence supports these findings, the court did not commit clear error in concluding that Hebron Academy occupied or used its property solely for its own purposes. *See Salvation Army (Lewiston)*, 1998 ME 98, ¶ 7, 710 A.2d 914.

[¶26] Because Hebron Academy is a literary and scientific institution, and because the properties at issue are "owned and occupied or used solely for [its] own purposes," the Superior Court properly concluded that the properties qualify for the exemption established in 36 M.R.S. § 652(1)(B).

B. Res judicata and Hebron Academy's 2009 tax exemption

[¶27] Hebron Academy contends that the trial court erred by concluding that res judicata precluded the declaratory judgment from applying to the 2009 tax year, because the denial of its 2009 abatement request by the Oxford County Board of Assessment Review was not a final judgment on the merits.[6]

[¶28] "[T]he decisions of state and municipal administrative agencies are to be accorded the same finality that attaches to judicial judgments." *Me. Cent. R.R. Co. v. Town of Dexter*, 588 A.2d 289, 292 (Me. 1991). Thus, when a party does not challenge the administrative denial of a tax abatement request by pursuing

---

[6] To the extent that Hebron Academy asserts in this appeal that it met the statute of limitations in its initial filing, or that it was "unjust" to bar its claim, we do not consider those assertions because an appeal was not taken from the Board's decision to the Superior Court. *See* M.R. Civ. P. 80B.

direct judicial review in a timely manner, administrative res judicata may bar the Superior Court from exercising its declaratory judgment jurisdiction to review the merits of the abatement request. *See id.* However, to have preclusive effect, an administrative adjudication must have been rendered on the merits of the case. *See Penkul v. Matarazzo*, 2009 ME 113, ¶ 8, 983 A.2d 375 (stating that res judicata applies only when there is a decision on the merits in a prior action).

[¶29] A decision on the merits for res judicata purposes includes "a dismissal for failure to come within an applicable statute of limitations." *Beegan v. Schmidt*, 451 A.2d 642, 644 (Me. 1982). Although a decision on the merits for res judicata purposes generally does not include a dismissal for procedural defects, *see Dutil v. Burns*, 1997 ME 1, ¶ 5, 687 A.2d 639, "[t]he question whether an action is barred by a statute of limitations is a matter of substance," *Bellegarde Custom Kitchens v. Leavitt*, 295 A.2d 909, 911 (Me. 1972) (citing 1 Field, McKusick & Wroth, *Maine Civil Practice*, § 1.2. (2d ed. 1970)).

[¶30] In this case, Hebron Academy sought a tax abatement for the 2009 tax year, which the Town denied because the filing did not meet the applicable statute of limitations. Hebron Academy appealed to the Oxford County Board of Assessment Review, which denied the abatement request on the same ground. Because the Board denied the abatement request based on Hebron Academy's failure to meet a statute of limitations, its decision was a decision on the merits for

res judicata purposes. *See Beegan*, 451 A.2d at 644. Thus, administrative res judicata bars Hebron Academy from seeking a declaration regarding the 2009 exemption status of its property. *See Me. Cent. R.R. Co.*, 588 A.2d at 292.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Bryan M. Dench, Esq., and Michael S. Malloy, Esq., Skelton, Taintor & Abbott, Auburn, for appellant Town of Hebron

John W. Conway, Esq., and Sonia J. Buck, Esq., Linnell, Choate & Webber, Auburn, for appellee Hebron Academy

Sandra L. Parker, Esq., Maine Hospital Association, Augusta, for amicus curiae Maine Hospital Association

Jonathan A. Block, Esq., and Kris J. Eimicke, Esq., Pierce Atwood LLP, Portland, for amicus curiae Maine Association of Independent Schools

Janet T. Mills, Esq., and Daniel W. Walker, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Augusta, for amicus curiae Maine Independent Colleges Association

**At oral argument:**

Bryan M. Dench, Esq., for appellant Town of Hebron

John W. Conway, Esq., for appellee Hebron Academy