STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-12-41
*PAF - YOR - 5/30 ...*

FRANCIS SMALL HERITAGE
TRUST, INC.,

Plaintiff/Appellant

v.

**ORDER AND DECISION**

THE TOWN OF LIMINGTON and
ASSESSORS OF THE TOWN OF
LIMINGTON,

Defendants/Appellees

## I. INTRODUCTION

The Francis Small Heritage Trust, Inc. (Trust) has appealed from a decision of the Maine Board of Property Tax Review (Board) of August 22, 2012, which denied its appeal from decisions of the Town of Limington (Town), which denied its requests for tax exemption status for 11 lots which it owns in Limington. The Board and the Town also denied the Trust's alternative request to further abate its property taxes on 8 lots that are under the Open Space classification. *See* 36 M.R.S. §§1101-*et seq.*

The Board, the parties to the appeal and The Maine Coast Heritage Trust, which was given leave to file an *amicus curiae* brief, have all acted most professionally and been very helpful in presenting and clarifying the issues in this dispute. The appeal has likewise been ably argued.

## II. CONTEXT

It is important to place this dispute in a broader context. Congress and the Maine Legislature have made numerous decisions in enacting a variety of tax laws.

Our federal and state income tax laws contain a wide array of exemptions, deductions and credits for both corporations and individuals. Maine's sales tax law, at 36 M.R.S. §1760, contains exemptions 1 through 94, many with multiple sub-parts. Likewise, there are numerous exemptions from property taxes or provisions which reduce local real estate taxes. See, for example, the exemptions listed at 36 M.R.S. §§651-661 and the benefits given to support open space, 36 M.R.S. §1106-A, farmland, 36 M.R.S. §1108 and tree growth properties, 36 M.R.S. §§571 – *et seq.* These are just some of the many examples. Both Congress and the Legislature have determined that individuals or corporations with certain characteristics or activities will have their taxes reduced. That means that others will pay more, services will be cut, or, in the case of recent federal budgets, a larger deficit will exist. There is nothing unusual about a legislative decision to grant a tax benefit.

For decades states and municipalities have competed for jobs by offering reduced price or free land, infrastructure improvements, tax breaks, job training and a host of incentives to attract businesses. Similar competition exists at an international law. Just recently the government of Ireland received substantial attention for its extremely favorable treatment of corporations. Tax burdens or the exemption from taxes are widely used as a tool to effectuate public policy.

The decision to grant or deny a property tax exemption to a benevolent or charitable institution must be placed in this broader context.

### III. STATUTORY HISTORY AND CASE LAW

The property tax exemption at issue here is the exemption from taxation for "the real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this State ...." 36

2

M.R.S. §652(1)(A). The full text of §652 is attached as Exhibit A. This is an ancient exemption.

Analogous provisions go back to at least 1819. See *Hebron Academy, Inc. v. Town of Hebron*, 2013 ME 15, ¶14. As early as 1845 the Maine legislature provided an exemption for "the real and personal property of all literary, benevolent, charitable and scientific institutions incorporated by this state." P.L. 1845, c. 159, §5(2). With modification this exemption, along with multiple others, has continued to exist and remains in effect.

Dozens of cases involving this exemption have gone to the Law Court including such early cases as *Marsh River Lodge of Free and Accepted Masons v. Inhabitants of Brooks*, 61 Me. 585 (1873) which dealt with whether the Marsh River Lodge was incorporated by Maine.

Over the last 140 years the Law Court has developed a substantial body of law which will be applied to the facts of the current dispute. In *The Maine Baptist Missionary Convention v. The City of Portland*, 65 Me. 92, 93 (1876) the Court noted that, "It may be difficult to say what a 'benevolent' institution is, if it differs from one that is merely charitable." Since then the Law Court has consistently stated that "benevolent" and "charitable" are synonymous.

The *Maine Baptist* case continued with a definition that has appeared in more recent cases. It stated, at 93, that "The word 'charity,' as found in our decisions and statutes, is not to be taken in its widest sense, denoting all the good affections which men ought to bear to each other, nor in its restricted and usual sense, signifying relief to the poor, but it is to be taken in its legal signification as derived chiefly from the statute of 43 Eliz., C. 4. Those purposes are deemed charitable which are enunciated in that act, or which by analogy are deemed within its spirit and intendment."

3

The Elizabethan Charitable Uses Act of 1601 with references to "...Maintenance of sicke and maymed Souldiers and Marriners, Schooles of Learninge ... some for Educacion and prefemente of Orphans ... some for Mariages of poore Maides (and the) Ayde and Helpe of younge tradesmen ..." makes, not surprisingly, no reference to open space preservation, wildlife protection or outdoor recreation.

Another case, which was cited by the Board at page 4 of its decision, is *Johnson v. South Blue Hill Cemetery Association*, 221 A.2d 280, 7 (Me. 1966) which stated, "A charity in the legal sense, may be more fully described as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." It quoted a 1932 case which referred to still older cases.

In *City of Bangor v. Rising Virtue Lodge No. 10*, 73 Me. 428, 433 (1882) what would become a consistent principle emerged. The Law Court stated, "... still taxation is the general rule; exemption from taxation the exception. Statutes violating the general rule are to be construed strictly." At 434, the Court indicated that a charitable use is to be public in the "sense of being so general and indefinite in its objects as to be deemed of common and public benefit." "The essential features of a public charity, are, that it is not confined to *privileged individuals*, but is open to the indefinite public."

In addition to the broader exemption for "benevolent and charitable institutions" there is a separate exemption for "Houses of religious worship ... and property owned and used by a religious society as a parsonage up to the value of $20,000 ..." *See* 36 M.R.S. §652(1)(G). The case *Ferry Beach Park Association of the Universalist Church v. City of Saco*, 136 Me. 202, 205 dealt with the potential conflict between the more general

4

benevolent and charitable exemption and the more specific exemptions. The Law Court stated, "There is also insistence that the Association is purely a religious corporation and must be governed as to exemptions by the provisions of R.S., Chap. 13, §6, Subdivision V. As this exemption applies only to houses of religious worship and parsonages, it is urged that consequentially there is no exemption here. A careful review of the cases cited as to distinctions between religious, benevolent and charitable societies ... indicates no real conflict with the decisions in support of our present holding, which found that the church was entitled to an exemption as a benevolent and charitable institution."

An earlier case involving the same property, *Ferry Beach Association of Universalists v. City of Saco*, 127 Me. 136, 138 (1928) had no concerns, "If the stern and rigid limitations of Puritanism are relaxed to permit the inclusion of some of the recreational pleasures of life in the gatherings of this Association." These were however incidental to the main purpose of "developing the missionary power of the Universalist Church". This case, as with many others, again noted that taxation is the rule and exemptions are the exceptions.

In *City of Lewiston v. All Maine Fair Association*, 138 Me. 39, 42 (1941) the Law Court considered the tax-exempt status of the Lewiston fairgrounds. It reaffirmed the principle that incidental use that did not fit the statutory exemption would not deprive the benevolent and charitable institution of its property tax exemption. However, the land that was rented to a "victualer" and a "riding master" for revenue "were clearly not occupied by the Association for its own purposes". Likewise the incidental use of hospital property by a doctor did not defeat the hospital's entitlement to an exemption in *Calais Hospital v. City of Calais*, 138 Me. 234 (1942). Also see *Episcopal Camp Foundation, Inc. v. Town of Hope*, 666 A.2d 108. 109 (Me. 1995), *Salvation Army v. Town of*

*Standish*, 1998 ME 75, 709 A.2d 727, *City of Lewiston v. Salvation Army*, 1998 ME 98, 710 A.2d 914 and *Hebron Academy, Inc. v. Town of Hebron*, 2013 ME 15, ¶¶22-*et seq.*

In 1954 the Law Court decided a York County case involving the refusal of the Town of Eliot to grant a tax exemption. In *Green Acre Baha'i Institute v. Town of Eliot*, 150 Me. 350 (1954) at page 354 the Law Court established a test that continues to be used, "In each situation where exemption is claimed, there must be a careful examination to determine whether in fact the institution is organized and conducting its operation for purely benevolent and charitable purposes in good faith, whether there is any profit motive revealed or concealed, whether there is any pretense to avoid taxation, and whether any production of revenue is purely incidental to a dominant purpose which is benevolent and charitable. When these questions are answered favorably to the petitioner for exemption, the property may not be taxed." The institute conducted educational and religious programs and, at 353, had "facilities for recreation." Also see *Maine AFL-CIO Housing Development Corporation v. Town of Madawaska*, 523 A.2d 581, 4 (Me. 1987) and *Town of Poland v. Poland Spring Health Institute*, 649 A.2d 1098, 1100 (Me. 1994).

Several cases address the strict requirements for obtaining tax-exempt status or the relationship between different types of exemptions or tax reductions. In *Silverman v. Town of Alton*, 451 A.2d 103 (Me. 1982) the charitable exemption was not available because the applicants were not incorporated in Maine. The applicants, as trustees of a wildlife trust maintained for the sole benefit of the University of Maine, also failed to obtain an exemption as a scientific institute as the University did not have "practical ownership." See page 106. The opinion also indicated, at 106, that "… a wildlife refuge or sanctuary, … in and of itself is not a scientific institution or organization." Whether the property would qualify for a tax reduction under current tree growth or open space provisions was obviously not decided.

6

A slightly earlier case from Lincoln County is *The Nature Conservancy of the Pine Tree State, Inc. v. Town of Bristol*, 385 A.2d 39 (Me. 1978). The plaintiff was a Maine non-profit corporation that acquired and administered property for the "promotion and advancement of conservation, educational, scientific and literacy purposes." See 40. The Nature Conservancy's stated purposes also included, the preservation of all types of wild nature, the establishment of natural reserves ... to be used for scientific, educational and esthetic purposes; (and) promoting the conservation and proper use of our natural resources. See 40.

In the Nature Conservancy case the Law Court decided that the property did not qualify for an exemption as a charitable institution because the former owners of the parcels had reserved private rights in the property making it subject to private noncharitable uses. See 43. The Court did hold, at 43, "Land held in its natural state does not become tax exempt by transfer to a charitable institution where the grantor retains the rights to access, passage or custodianship, more particularly since these tend to be the only private rights of ownership exercised while land is privately being held in its natural state." The Law Court did not determine that the Nature Conservancy was not a charitable institution nor that land in its natural state could not be tax exempt. As the property was not used solely as 36 M.R.S. §652 requires, for the Conservancy's "own purposes" the claim to a charitable exemption failed. See 44.

There are three more cases that will be discussed before turning to the facts of this case, the Board's decision and the application of Maine's statutes and Law Court decisions to the facts and decision.

*Holbrook Island Sanctuary v. The Inhabitants of the Town of Brooksville*, 161 Me. 476 (1965) determined that the Holbrook Island Sanctuary was not exempt from taxation. The Law Court stated, at 484, "First, the interested parties here endeavor to place in the ownership of a tax exempt corporation nothing in substance more than a game

7

preserve. The purpose is plainly to benefit wild animals. We find no benefit to the community or to the public in the proposed sanctuary within the principle relating to charitable trusts relating to animals." The claim for an exemption was additionally rejected as the sanctuary, at 488, sought "to create a game preserve or at most a game management area with conditions deemed harmful by the regional game biologist of the Fish and Game Department" by prohibiting even restricted hunters for game management.

*Cushing Nature and Preservation Center v. Town of Cushing*, 2001 ME 149, 785 A.2d 342, is the most recent case directly related to the issues in this case. The Center owned some 400 acres valued at 2.5 million dollars and contained a farmhouse and barn. Public access, though perhaps restricted, was permitted. Some nature-related programs were claimed to have been presented along with some educational, recreational and scientific activities. The Superior Court had determined that an alleged restriction to access by clammers was against public policy, like the no hunting provisions in *Holbrook Island*, and the existence of the statutory open space land program and its tax abatement provisions prevented the granting of a full exemption as a charitable institution.

On appeal the Law Court noted that a court must determine whether the stated purpose of the organization is charitable within the meaning of the statute and if, in fact, the organization is actually using its property solely for purely benevolent and charitable purposes. See ¶10.

The Law Court resolved the issue of access by clammers by stating, at ¶13, that if the purpose of a charitable use violates public policy then it cannot be classified as charitable. However, a charity may lawfully restrict the use of its property.

The Law Court did not determine that the Farm and Open Space abatement provisions found at 36 M.R.S. §§1101-21 precluded a full tax exemption for a charitable

8

institution engaged in land conservation. The Court stated, at ¶15, given the nature of the record evidence, "Thus, we need not determine whether land conservation or preservation, standing alone, could constitute a charitable use." The *Cushing* case concluded with a discussion of whether the *Cushing Nature Center* was a charitable institution, whether its activities were conducted in good faith and whether it was created as a pretense to evade taxation. See ¶18. The Superior Court decision was vacated and the case was remanded to the Superior Court.

The final case is *Christian Fellowship and Renewal Center v. Town of Limington*, 2006 ME 44, 896 A.2d 287. That case involves an extensive review of Maine's charitable exemption jurisprudence. In addition to the principles already noted the Law Court indicated, at ¶24, that "Whether a charitable activity offsets or displaces a government service is one factor to consider, along with other evidence, in reviewing qualification for a charitable exemption ... but the 'quid pro quo' factor alone does not control qualification or disqualification for the charitable exemption." Lastly, at ¶31, the Court stated that "... recreation and relaxation activities – even very minimal activities – may qualify as charitable activities supporting a charitable exemption." "A charitable use may qualify a property for exemption, even if the property has little human use for recreation or relaxation." See ¶31.

## IV. THE BOARD'S DECISION AND THE FACTS

The Board of Property Tax Review in its decision of August 22, 2012 stated all of the essential facts. The Trust owns 11 contiguous parcels in Limington. Three are Tree Growth properties while the remaining eight are Open Space properties. As the Board stated, "The Trust's purposes are to conserve natural resources and to provide free public access to those natural resources... [T]he properties are used and operated as conserved wildlife habitat. The property is open to the public 365 days per year and utilized by local schools for field trips and environmental education. The properties

9

also remain open for traditional uses such as hunting, fishing, hiking, cross country skiing and snowmobiling." Decision at pages 2 and 3. The Trust has also sponsored a Boy Scout troop, participated in a project involving the risk of exposure to Lyme disease and conducted a workshop related to invasive plants.

The Trust's Articles of Incorporation, at Article Second, paragraph b, indicate that another purpose of the trust is to "... protect appropriate uses such as logging, farming and other compatible commercial activities within specified areas and adjacent areas." See decision at page 3.

The Board found that the Trust did not qualify for exempt status because its activities are not restricted solely to benevolent and charitable purposes as the Articles of Incorporation permit it to "engage in ... appropriate uses such as logging, farming and other compatible commercial activities." The Board noted that a separate farm owned by the Trust in the Town of Parsonsfield engages in commercial farming.

The Board also determined that as 8 of the 11 parcels are classified as Open Space and enjoy reduced assessments those parcels are not eligible for a full exemption. It based its decision on the single Superior Court decision in *Cushing* that was vacated by the Law Court.

The last issues addressed by the Board dealt with the valuation of the Open Space properties, as the Board held that the Trust was not entitled to a full charitable institution exemption. These issues involved the interpretation of 36 M.R.S. §1106-A(2) with its relatively complex multi-step analysis. There was also a finding that the Trust had failed to prove that its property had essentially no market value.

The Board denied the Trust's appeal and an appeal to the Superior Court was timely filed.

10

## V.  THE APPEAL

The complaint to the Superior Court contained five counts.  By earlier order Count I, which is an appeal pursuant to procedural rule 80C, M.R.Civ.P., and Count II which is an appeal from the Open Space valuations are to be decided now following the submission of briefs and oral argument.  Counts III and IV dealing with the 2011 and 2012 taxes respectively and Count V based on the federal civil rights act at 42 U.S.C. §1983 were separated and are to be considered later if necessary.

## VI.  DISCUSSION AND DECISION

The Trust meets all of the tests set forth in the *Green Acre Baha'i Institute* case.  It is operated for purely benevolent and charitable purposes in good faith.  There is no profit motive revealed or concealed.  There is no pretense to avoid taxes.  The production of any revenue is purely incidental to a dominant purpose which is benevolent and charitable.

The Articles of Incorporation permit the "protection" of logging, farming and other compatible commercial activities.  The Articles do not actually authorize such activities.  Far more importantly, no such activities have taken place in Limington and, if they had, limited activities, which are "purely incidental", are permitted.  Numerous cases over decades including the recent *Hebron Academy* case all support that proposition.  The minimal revenue derived from property in another town where it holds a conservation easement does not change this conclusion.

There is nothing in the requirements of 36 M.R.S. §652(1)(C) which would preclude the Trust from receiving an exemption.  All of those requirements were met.

There is no indication that anything that the Trust does violates public policy such as the ban on selective hunting in *Holbrook Island* or the Superior Court's concern about clammers in the *Cushing* case.

11

The *Christian Fellowship* case notes that while a "quid pro quo" is not required, it may be considered. Pursuant to 36 M.R.S. §651(1)(B) the property of the State of Maine is exempt from local property taxation. If the State of Maine acquired the Trust property and called it, based on its location, Sawyer Mountain State Park or Limington State Park, the Town would receive no property taxes. The Trust provides what a park does and even more. It preserves open spaces. It protects plants and wildlife. It permits multiple forms of recreation and allows public access. It is open year round and charges no fees.

It is time to directly declare that a legitimate land trust, such as this one, which meets the statutory and case law requirements, is a benevolent and charitable institution exempt from local property taxes. The direct and indirect value of open space preservation particularly when, in appropriate cases, it is coupled with access for a wide variety of recreational activity is within any modern definition of a charitable institution. In addition to the ecological and environmental benefit of land preservation there are numerous physical, psychological and, for some, even spiritual benefits to having access to undeveloped land.

Whether one refers to the works and writings of President Theodore Roosevelt, Aldo Leopold or John Muir or more current scientists or authors there is an unmistakable value, despite the loss of tax revenues, to the preservation of open space particularly in a state with limited public lands. An institution such as the Trust meets the definition of a charitable institution and should have been granted an exemption.

There is nothing in the text of either the Maine Tree Growth Tax Law at 36 M.R.S. §§571-*et seq.* or in the Farm and Open Space Law found at 36 M.R.S. §§1101-*et seq.* that indicates that either would preclude a charitable institution from seeking an exemption under 36 M.R.S. §652(1)(A). As the Law Court cases have indicated some land trusts would not qualify for an exemption because they "were not incorporated by this State"

12

or private ownership rights were retained. Likewise properties in private ownership which would qualify for a reduction in taxes under the Tree Growth or Open Space provisions would not, given their private ownership, qualify for the exemption afforded a charitable institution. Whether one uses the mathematical concepts of sets or the visual depiction of a Venn diagram it is clear that charitable institution exemptions versus tree growth or open space abatements, while sometimes having elements in common, are distinct concepts.

It is not necessary to determine whether the Board correctly calculated any open space abatement as the Trust is entitled to a full exemption.

The entry is:

Judgment for the plaintiff on Counts I and II of the complaint. Decision of the Maine Board of Property Tax Review of August 22, 2012 is reversed. The Francis Small Heritage Trust, Inc. is entitled to an exemption from property taxation as a benevolent and charitable institution. The parties shall inform the Clerk within 30 days how they wish to proceed with the remaining counts.

Dated: May 30, 2013

Paul A. Fritzsche
Justice, Superior Court

13

EXHIBIT A

Ch. 105

**B-1.** Real estate owned by the Water Resources Board of the State of New Hampshire and used for the preservation of recreational facilities in this State.

**C.** All property which by the Articles of Separation is exempt from taxation.

**D.** The property of any public municipal corporation of this State appropriated to public uses, if located within the corporate limits and confines of such public municipal corporation.

**E.** The pipes, fixtures, hydrants, conduits, gatehouses, pumping stations, reservoirs and dams, used only for reservoir purposes, of public municipal corporations engaged in supplying water, power or light, if located outside of the limits of such public municipal corporation.

**F.** All airports and landing fields and the structures erected thereon or contained therein of public municipal corporations whether located within or without the limits of such public municipal corporations. Any structures or land contained within such airport not used for airport or aeronautical purposes shall not be entitled to this exemption. Any public municipal corporation which is required to pay taxes to another such corporation under this paragraph with respect to any airport or landing field shall be reimbursed by the county wherein the airport is situated.

**G.** The pipes, fixtures, conduits, buildings, pumping stations and other facilities of a public municipal corporation used for sewage disposal, if located outside the limits of such public municipal corporation.

R.S.1954, c. 92, § 6; 1955, c. 131; 1955, c. 399, §§ 1, 6; 1961, c. 223, § 6; 1961, c. 395, § 33; 1965, c. 125; 1967, c. 115; 1981, c. 492, § D, 6; 1981, c. 595, § 4.

[1] No subsec. 2 was enacted.

## § 652. Property of institutions and organizations

1. [1]**Property of institutions and organizations.** The property of institutions and organizations is exempt from taxation as provided in this subsection.

**A.** The real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated by this State are exempt from taxation. Such an institution may not be deprived of the right of exemption by reason of the source from which its funds are derived or by reason of limitation in the classes of persons for whose benefit the funds are applied.

For the purposes of this paragraph, "benevolent and charitable institutions" includes, but is not limited to, nonprofit nursing homes licensed by the Department of Health and Human Services pursuant to Title 22, chapter 405,[2] nonprofit residential care facilities licensed by the Department of Health and Human Services pursuant to Title 22, chapter 1663,[3] nonprofit community mental health service facilities licensed by the Commissioner of Health and Human Services pursuant to Title 34-B, chapter 3[4] and nonprofit child care centers incorporated by this State as benevolent and charitable institutions. For the purposes of this paragraph, "nonprofit" refers to an institution that has been determined by the United States Internal Revenue Service to be exempt from taxation under Section 501(c)(3) of the Code.[5]

**B.** The real estate and personal property owned and occupied or used solely for their own purposes by literary and scientific institutions are exempt from taxation. If any building or part of a building is used primarily for employee housing, that building, or that part of the building used for employee housing, is not exempt from taxation.

**C.** Further conditions to the right of exemption under paragraphs A and B are that:

(1) Any corporation claiming exemption under paragraph A must be organized and conducted exclusively for benevolent and charitable purposes;

(2) A director, trustee, officer or employee of an organization claiming exemption may not receive directly or indirectly any pecuniary profit from the operation of that organization, except as reasonable compensation for services in effecting its purposes or as a proper beneficiary of its strictly benevolent or charitable purposes;

(3) All profits derived from the operation of an organization claiming exemption and the proceeds from the sale of its property must be devoted exclusively to the purposes for which it is organized;

(4) The institution, organization or corporation claiming exemption under this section must file with the assessors upon their request a report for its preceding fiscal year in such detail as the assessors may reasonably require;

(5) An exemption may not be allowed under this section in favor of an agricultural fair association holding pari-mutuel racing meets unless it has qualified the next preceding year as a recipient of a stipend from the Stipend Fund provided in Title 7, section 86;

(6) An exemption allowed under paragraph A or B for real or personal property owned and occupied or used to provide federally subsidized residential rental housing is limited as follows: Federally subsidized residential rental housing placed in service prior to September 1, 1993 by other than a nonprofit housing corporation that is acquired on or after September 1, 1993 by a nonprofit housing corporation and the operation of which is not an unrelated trade or business to that nonprofit housing corporation is eligible for an exemption limited to 50% of the municipal assessed value of that property.

An exemption granted under this subparagraph must be revoked for any year in which the owner of the property is no longer a nonprofit housing corporation or the operation of the residential rental housing is an unrelated trade or business to that nonprofit housing corporation.

(a) For the purposes of this subparagraph, the following terms have the following meanings.

(i) "Federally subsidized residential rental housing" means residential rental housing that is subsidized through project-based rental assistance, operating assistance or interest rate subsidies paid or provided by or on behalf of an agency or department of the Federal Government.

(ii) "Nonprofit housing corporation" means a nonprofit corporation organized in the State that is exempt from tax under Section 501(c)(3) of the Code and has among its corporate purposes the provision of services to people of low income or the construction, rehabilitation, ownership or operation of housing.

(iii) "Residential rental housing" means one or more buildings, together with any facilities functionally related and subordinate to the building or buildings, located on one parcel of land and held in common ownership prior to the conversion to nonprofit status and containing 9 or more similarly constructed residential units offered for rental to the general public for use on other than a transient basis, each of which contains separate and complete facilities for living, sleeping, eating, cooking and sanitation.

(iv) "Unrelated trade or business" means any trade or business whose conduct is not substantially related to the exercise or performance by a nonprofit corporation of the purposes or functions constituting the basis for exemption under Section 501(c)(3) of the Code.

(b) Eligibility of the following property for exemption is not affected by the provisions of this subparagraph:

(i) Property used as a nonprofit nursing home, residential care facility licensed by the Department of Health and Human Services pursuant to Title 22, chapter 1663 [6] or a community living arrangement as defined in Title 30-A, section 4357-A or any property owned by a nonprofit organization licensed or funded by the Department of Health and Human Services to provide services to or for the benefit of persons with mental illness or mental retardation;

(ii) Property used for student housing;

(iii) Property used for parsonages;

(iv) Property that was owned and occupied or used to provide residential rental housing that qualified for exemption under paragraph A or B prior to September 1, 1993; or

(v) Property exempt from taxation under other provisions of law; and

(7) In addition to the requirements of subparagraphs (1) to (4), an exemption is not allowed under paragraph A or B for real or personal property owned and occupied or used to provide residential rental housing that is transferred or placed in service on or after September 1, 1993, unless the

property is owned by a nonprofit housing corporation and the operation of the residential rental housing is not an unrelated trade or business to the nonprofit housing corporation.

For the purposes of this subparagraph, the following terms have the following meanings.

(a) "Nonprofit housing corporation" means a nonprofit corporation organized in the State that is exempt from tax under Section 501(c)(3) of the Code and has among its corporate purposes the provision of services to people of low income or the construction, rehabilitation, ownership or operation of housing.

(b) "Residential rental housing" means one or more buildings, together with any facilities functionally related and subordinate to the building or buildings, containing one or more similarly constructed residential units offered for rental to the general public for use on other than a transient basis, each of which contains separate and complete facilities for living, sleeping, eating, cooking and sanitation.

(c) "Unrelated trade or business" means any trade or business whose conduct is not substantially related to the exercise or performance by a nonprofit organization of the purposes constituting the basis for exemption under Section 501(c)(3) of the Code.

**D. Repealed.** Laws 1979, c. 467, § 3.

**E.** The real estate and personal property owned, occupied and used for their own purposes by posts of the American Legion, Veterans of Foreign Wars, American Veterans, Sons of Union Veterans of the Civil War, Disabled American Veterans and Navy Clubs of the U.S.A. that are used solely by those organizations for meetings, ceremonials or instruction or to further the charitable activities of the organization, including all facilities that are appurtenant to that property and used in connection with those purposes, are exempt from taxation. If an organization is not the sole occupant of the property, the exemption granted under this paragraph applies only to that portion of the property owned, occupied and used by the organization for its purposes.

Further conditions to the right of exemption are that:

(1) A director, trustee, officer or employee of any organization claiming exemption may not receive directly or indirectly any pecuniary profit from the operation of that organization, except as reasonable compensation for services in effecting its purposes or as a proper beneficiary of its purposes;

(2) All profits derived from the operation of the organization and the proceeds from the sale of its property must be devoted exclusively to the purposes for which it is organized; and

(3) The institution, organization or corporation claiming exemption under this paragraph must file with the assessors upon their request a report for its preceding fiscal year in such detail as the assessors may reasonably require.

**F.** The real estate and personal property owned and occupied or used solely for their own purposes by chambers of commerce or boards of trade in this State are exempt from taxation.

Further conditions to the right of exemption are that:

(1) A director, trustee, officer or employee of any organization claiming exemption may not receive directly or indirectly any pecuniary profit from the operation of that organization, except as reasonable compensation for services in effecting its purposes or as a proper beneficiary of its purposes;

(2) All profits derived from the operation of the organization and the proceeds from the sale of its property must be devoted exclusively to the purposes for which it is organized; and

(3) The institution, organization or corporation claiming exemption under this paragraph must file with the assessors upon their request a report for its preceding fiscal year in such detail as the assessors may reasonably require.

**G.** Houses of religious worship, including vestries, and the pews and furniture within them; tombs and rights of burial; and property owned and used by a religious society as a parsonage up to the value of $20,000, and personal property not exceeding $6,000 in value are exempt from taxation, except that any portion of a parsonage that is rented is subject to taxation. For purposes of this

paragraph
whether or
worship w

**H.** Real e
college fra
tions for r
appurtenar
a building
those purp

Further co

(1) A
receive
as reas
purpos

(2) All
proper

(3) The
file wit
assesso

**I.** Repeale

**J.** The rea
and E to
organizatio

**K.** Except
occupied or
tion that is
the operatic
maintenanc
beginning o
property.

**L. Deleted**

An organizatio
accompanied by
in which the ex
would otherwise
that the organiz
basis upon which
R.S.1954, c. 92, §
16, 1967; 1967, c.
1979, c. 467, §§ 2
March 31, 1994; ?
eff. April 2, 1998;
§ 19; 2007, c. 627

1 No subsection 2 v

2 22 M.R.S.A. § 18?

3 22 M.R.S.A. § 78(

4 34-B M.R.S.A. § ?

5 26 U.S.C.A. § 501

6 22 M.R.S.A. § 78(

**§ 653.** Estate

The following o

paragraph, "parsonage" means the principal residence provided by a religious society for its cleric whether or not the principal residence is located within the same municipality as the house of religious worship where the cleric regularly conducts religious services.

**H.** Real estate and personal property owned by or held in trust for fraternal organizations, except college fraternities, operating under the lodge system that are used solely by those fraternal organizations for meetings, ceremonials or religious or moral instruction, including all facilities that are appurtenant to that property and used in connection with those purposes are exempt from taxation. If a building is used in part for those purposes and in part for any other purpose, only the part used for those purposes is exempt.

Further conditions to the right of exemption under this paragraph are that:

(1) A director, trustee, officer or employee of any organization claiming exemption may not receive directly or indirectly any pecuniary profit from the operation of that organization, except as reasonable compensation for services in effecting its purposes or as a proper beneficiary of its purposes;

(2) All profits derived from the operation of the organization and the proceeds from the sale of its property must be devoted exclusively to the purposes for which it is organized; and

(3) The institution, organization or corporation claiming exemption under this paragraph must file with the assessors upon their request a report for its preceding fiscal year in such detail as the assessors may reasonably require.

**I.** **Repealed.** Laws 1979, c. 467, § 7.

**J.** The real and personal property owned by one or more of the organizations in paragraphs A and B and E to H and occupied or used solely for their own purposes by one or more other such organizations are exempt from taxation.

**K.** Except as otherwise provided in this subsection, the real and personal property leased by and occupied or used solely for its own purposes by an incorporated benevolent and charitable organization that is exempt from taxation under section 501 of the Code and the primary purpose of which is the operation of a hospital licensed by the Department of Health and Human Services, a health maintenance organization or a blood bank are exempt from taxation. For property tax years beginning on or after April 1, 2012, the exemption provided by this paragraph does not include real property.

**L.** **Deleted.** Laws 2007, c. 627, § 20.

An organization or institution that desires exemption under this section must file a written application accompanied by written proof of entitlement for each parcel on or before the first day of April in the year in which the exemption is first requested with the assessors of the municipality in which the property would otherwise be taxable. If granted, the exemption continues in effect until the assessors determine that the organization or institution is no longer qualified. Proof of entitlement must indicate the specific basis upon which exemption is claimed.

R.S.1954, c. 92, § 6; 1955, c. 73; 1955, c. 399, §§ 1, 4; 1957, c. 319; 1963, c. 229; 1965, c. 13; 1967, c. 64, eff. March 16, 1967; 1967, c. 372; 1971, c. 111; 1971, c. 475; 1973, c. 719; 1975, c. 771, § 402, eff. Jan. 4, 1977; 1977, c. 487; 1979, c. 467, §§ 2 to 7; 1991, c. 420; 1993, c. 286, § 1, eff. June 7, 1993; 1993, c. 422, §§ 4, 5; 1993, c. 572, § 1, eff. March 31, 1994; 1995, c. 366, § 1; 1995, c. 560, § K–82; R.R.1995, c. 2, § 93; 1997, c. 442, § 3; 1997, c. 668, § 20, eff. April 2, 1998; 2001, c. 354, § 3; 2001, c. 596, §§ B–23, B–24; 2005, c. 563, § 16; 2005, c. 645, § 1; 2007, c. 438, § 19; 2007, c. 627, § 20; 2009, c. 425, § 1.

[1] No subsection 2 was enacted.

[2] 22 M.R.S.A. § 1811 et seq.

[3] 22 M.R.S.A. § 7801 et seq.

[4] 34–B M.R.S.A. § 3001 et seq.

[5] 26 U.S.C.A. § 501(c).

[6] 22 M.R.S.A. § 7801 et seq.

# § 653. Estates of veterans

The following estates of veterans are exempt from taxation:

ATTORNEY FOR PLAINTIFF:
DAVID A. LOURIE, ESQ.
189 SPURWINK AVENUE
CAPE ELIZABETH, ME 40107

ATTORNEY FOR DEFENDANT:
LEAH B. RACHIN, ESQ.
BERGEN PARKINSON, LLC
62 PORTLAND ROAD, SUITE 25
KENNEBUNK, ME 04043